MARIA C. PENFOLD, Respondent, *v.* THE UNIVERSAL LIFE INSURANCE COMPANY, Appellant.

Where a policy of life insurance, contained a condition, avoiding it in case the insured should "die by his own hand or act, voluntary or otherwise," *held*, that this did not cover the case of a death, purely accidental, caused by poison taken by the insured through mistake or ignorance, he being at the time sane; and that, therefore, where the testimony tended to show that the insured, who was conceded to be sane, died from taking an over-dose of medicine, a charge to the jury that to sustain a defense based on said condition, they must find that the deceased " took the over-dose for the purpose of destroying his life voluntarily, knowingly and intentionally," was not error.

*It seems* that the act stipulated against is suicide, and the words " voluntary or otherwise" preclude one claiming under the policy, if the death was suicidal, from setting up insanity.

(Argued April 20, 1881; decided May 31, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made January 6, 1881, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was upon a policy of insurance issued by defendant, on the life of William Penfold, husband of the plaintiff, for her benefit.

The material facts are set forth in the opinion.

*John G. Milburn* for appellant. It being conclusively established by the evidence that William Penfold died from the effects of a poisonous drug taken by himself, the court erred in leaving this question to the consideration of the jury. (*Baulec* v. *N. Y. C. & H. R. R. R. Co.*, 59 N. Y. 356, 366 ; *Ins. Co.* v. *N. Y. T. & L. Co.*, 73 id. 282, 291; *De Gogorza* v. *Knickerbocker Life Ins. Co.*, 65 id. 232, 242 ; *Millbank* v. *Dennistown*, 21 id. 386 ; *Strong* v. *Brennan*, 15 id. 524, 526; *Sanborn* v. *Lefferts*, 58 id. 179 ; *Algur* v. *Gardner*, 54 id. 360 ; *Harris* v. *Wilson*, 1 Wend. 511 ; *Fay* v. *Grimsteed*, 10 Barb. 321 ; *Ins. Co.* v. *Watson*, 23 Mich. 486 ; 22 Wall. 32, 38; Bliss on Life Insurance, 444.) The sworn statements of Mrs. Penfold in

the proofs of death that her husband died from the effects of the over-dose of medicine, not having been corrected before the trial, operate as estoppels, and it was error to leave the question of the cause of death to the jury. (*Irving* v. *Excelsior, etc.*, 1 Bosw. 507 ; *Campbell* v. *Ins. Co.*, 10 Allen, 213; *De Grove* v. *Metropolitan Ins. Co.*, 61 N. Y. 594 ; *Ins. Co.* v. *Newton*, 22 Wall. 32.) The plaintiff could recover under the policy only its net present value if the death of the insured was caused by his own hand or act, whatever may have been his intention in doing that act. (*International L. Ins. & Trust Co.* v. *Franklin F. Ins. & Trust Co.*, 66 N. Y. 119 ; *De Gogorza* v. *Knickerbocker Life Ins. Co.*, 65 id. 241 ; *Gates* v. *McKee*, 13 id. 234 ; *Baker* v. *Union Mut. L. Ins. Co.*, 43 id. 287 ; *Gates* v. *McKee*, 13 id. 235 ; *Bigelow* v. *Berkshire L. Ins. Co.*, 3 Otto, 286 ; *Borrodaile* v. *Hunter*, 5 M. & G. 668 ; *Breasted* v. *Farmers' L. & T. Co.*, 4 Hill, 74 ; *Breasted* v. *Ins. Co.*, 8 N. Y. 305 ; *Van Zandt* v. *Ins. Co.*, 55 id. 169 ; *Weed* v. *Ins. Co.*, 70 id. 561 ; *Newton* v. *Ins. Co.*, 76 id. 426 ; *Ins. Co.* v. *Terry*, 15 Wall. 580 ; *Borrodaile* v. *Hunter*, 5 M. & G. 639 ; *Chapman* v. *Republic L. Ins. Co.*, 3 Bigelow's L. Ins. 110 ; *Adkins* v. *Ins. Co.*, 9 Ins. L. J. 8, 17 ; *Van Zandt* v. *Ins. Co.*, 55 N. Y. 169, 176 ; *Jacobs* v. *Ins. Co.*, 1 McArthur, 641 ; *Lawrence* v. *Mut. L. Ins. Co.*, 9 Ins. L. J. 313.) The presumption is, in the absence of evidence to the contrary, that Penfold, when he took the fatal dose, intended to kill himself. (1 Greenl. Ev., § 18, note 2 ; *Thomas* v. *People*, 67 N. Y. 218 ; *Stokes* v. *People*, 53 id. 164 ; *Van Pelt* v. *McGraw*, 4 id. 110, 114 ; *People* v. *Orcutt*, 1 Park. Cr. 252.) Death from taking a grossly excessive and fatal dose of a dangerous medicine, known to be such, is not an accident, but the result of a culpably negligent act. (*Southard* v. *Railway Pass. Ins. Co.*, 34 Conn. 574 ; Bliss on Life Ins., § 396 ; May on Insurance, § 515 ; *Lawrence* v. *Mut. L. Ins. Co.*, 9 Ins. L. J. 313 ; Story on Equity Jurisprudence, § 78 ; Williard's Eq. Jur. [Potter's ed.] 51, 52 ; *Sinclair* v. *Maritime Pass.*, 3 Et. 478.) The proviso in question is not contrary to public policy. ( *Van Zandt* v. *Life Ins.*

*Co.*, 55 N. Y. 169, 176 ; *De Gogorza* v. *Life Ins. Co.*, 65 id. 232 ; *Reg.* v. *Salmon et al.*, L. R., 6 Q. B. D. 79.)

*D. H. McMillan* for respondent. The legal presumption is, that the death of the assured was not caused by a suicidal act, and there being conflicting testimony as to the cause of death, the court properly refused to charge the jury that the assured died by his own hand or act. (*Phillips* v. *Louisiana Eq. L. Ins. Co.*, 5 Bigelow's L. Ins. 165.) It cannot be presumed that, if the assured died from an over-dose of medicine, he took it with the intention of taking his own life. (*Mallory* v. *The Travelers' Ins. Co.*, 47 N. Y. 52 ; *Breasted* v. *The Farmers' Loan & Trust Co.*, 8 id. 299 ; *Jacobs* v. *National Ins. Co.*, 1 McArthur, 632–641 ; *S. C.*, 5 Bigelow's L. Ins. 42–50 ; *Lawrence* v. *Mutual L. Ins. Co.* [Appellate Court of Illinois], 9 Ins. L. J. 313.) The words "shall die by his own hand or act (voluntary or otherwise)," as words of forfeiture in the policy, cannot, in the connection used, be construed literally. (*Cooper* v. *Mass. Mut. L. Ins. Co.*, 102 Mass. 227 ; *De Gogorza* v. *Knickerbocker Life Ins. Co.*, 65 N. Y. 232–240 ; *Bigelow* v. *Berkshire Life Ins. Co.*, 3 Otto, 286–8 ; *Breasted* v. *Farmers' L. & T. Co.*, 8 N. Y. 299 ; Bliss on Life Insurance [1st ed.], 360–362 ; *Eastabrook* v. *U. M. Life Ins. Co.*, 54 Me. 224 ; *Hoffman* v. *Ætna Fire Ins. Co.*, 32 N. Y. 405 ; May on Life Ins., § 307 ; *Knickerbocker Co.* v. *Peters*, 42 Md. 414, 417–18 ; *Dean* v. *Am. Mut. Life Co.*, 4 Allen, 96.) Such a provision does not make death by accident, although literally death by one's own hand, work a forfeiture of the policy. (*Borrodaile* v. *Hunter*, 15 M. & G. 639 ; 54 Me. 224 ; *Equitable L. Ins. Co.* v. *Patterson*, 41 Ga. 338 ; *Jacobs* v. *Nat. Ins. Co.*, 1 McArthur, 632, 641 ; *S. C.*, 5 Bigelow's Life & Accident Ins. 42, 50 ; *Lawrence* v. *Mut. L. Ins Co.*, 9 Ins. L. J. 313.) Words of forfeiture in a policy of insurance are to be construed against the underwriter ; especially is this the rule where such words are susceptible of different constructions. (*Hayward* v. *North-western Ins. Co.*, 19 Abb. 116 ; *Catlin* v. *Springfield Ins. Co.*, 1 Sum. 434 ; *Weston Ins. Co.*

v. *Cupper*, 32 Penn. St. 351; *Franklin F. Ins. Co.* v. *Brook*, 57 id. 74; *Dilleber* v. *Home L. Ins. Co.*, 69 N. Y. 256, 262–4; *Campbell* v. *N. E. L. Ins. Co.*, 98 Mass. 291; *De Gogorza* v. *Knick. L. Ins. Co.*, 65 N. Y. 237–8; *Daniels* v. *H. R. Ins. Co.*, 12 Cush. 416, 424; *Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 405, 413–414.)

Rapallo, J.   The policy contained a condition that, if the person whose life was insured should " die by his own hand or act, voluntary or otherwise," the company should not be liable, etc.

The sole defense to this action is the alleged violation of this condition and the ground of appeal is that the court gave improper instructions to the jury in two respects.

First. The defendant contends that the evidence shows conclusively that the deceased came to his death ·by taking an over-dose of medicine which had been prescribed for him ·by his physician, and that the court, therefore, erred in leaving it to the jury as an open question to ·say whether or not the death arose from that cause.   Secondly. That the court again erred in instructing the jury that in order to sustain the defense they must find that the deceased took the over-dose for the purpose of destroying his life, voluntarily, knowingly and intentionally, it being conceded that there·was no evidence of any insanity.    The exceptions to these two portions of the charge raise the only questions to be determined on this appeal.

As to the first point there is not much difficulty.   The evidence strongly tended to show that the deceased took an excessive quantity of the medicine, and that his death was attributable to that cause; but there was no direct evidence of either of those facts.

The conclusions in respect to them depended upon ·inferences, which it was within the province of the jury to draw. The serious question in the case is that which arises upon the charge that, in the conceded absence of any evidence of insanity, the defendant was not exempted from liability unless the

deceased took the over-dose for the purpose of destroying his own life, knowingly, voluntarily and intentionally.

The ordinary clause in life policies, that the insurer shall not be liable in case the person whose life is insured shall die by his own hand or act, has been repeatedly the subject of judicial construction and it is now well settled that it is not to be construed as comprehending every possible case in which life is taken ·by the party's act, and that an unintentional or accidental taking of one's own life is not within the meaning of the clause. The taking of one's own life, not accidentally, but under the influence of insanity, has also been determined not to be a violation of the condition, but there has been difference of opinion as to the degree or character of the insanity which exempts from the operation of the condition; some authorities holding that it must be such a degree of insanity as to deprive the party of knowledge of the nature and probable consequences of the act which produced the death, others adopting the rule of the criminal law, that he must have been so far deprived of his reason as to be unconscious of the moral obliquity of the act, and later cases holding that, although possessed of sufficient reason to comprehend the consequences of the act and the moral wrong which it involved, yet if the patient was driven to it by an insane impulse, produced by disease, which disabled him from controlling his own actions, and the death resulted from that cause, the act was not voluntary and the condition was not violated. (*Van Zandt* v. *Ins. Co.*, 55 N. Y. 169; *Newton* v. *Ins. Co.*, 76 id. 426.)

The question in all cases of this character is the proper interpretation of a contract, and the point of inquiry is, what obligations the parties must, from the language used, with relation to the subject-matter and the circumstances, be reasonably supposed to have intended to assume. The clause against suicide is clearly intended to protect the insurance company against the fraudulent act of the insured whereby he may, even at the sacrifice of his own life, secure a benefit to those whom he may desire to favor, at the expense of the insurance company. But, as has been already said, it has been held from the

earliest day that a suicide committed in consequence of insanity was not within the meaning of the condition, although within its literal terms. The decisions establishing this doctrine were placed upon the ground that the death, though apparently caused by the act of the party, was not so caused in contemplation of law, because his mind did not concur in the act, his mental organs having been so diseased as to cease to control his actions, or to guide them in accordance with reason.

At a later day in the history of life insurance some companies, for the purpose of avoiding the difficulties involved in the inquiry as to the condition of the mind of the person committing self-destruction, stipulated for exemption from liability in all cases of suicide, whether "sane or insane." Others adopted the words "voluntary or involuntary," others, as in the present case, "voluntary or otherwise."

It would not be a fair interpretation of this clause, in either of the forms mentioned, to hold it to cover the case of a purely accidental death from poison occurring to a sane person, through mistake or ignorance, though his own hand might have been the innocent instrument by which the deadly potion was conveyed to his lips. Such an accident cannot be presumed to have entered into the minds of the contracting parties, or to have been intended to be stipulated against. The insurance was intended to cover the risk of premature death, which might result from any of the casualties to which human life is subject—self-destruction being excepted. A purely accidental act, committed by a sane person, with no idea of injuring himself, cannot be regarded as an act of self-destruction within the meaning of such a contract. Suicide is the act stipulated against. The words "voluntary or otherwise" preclude the parties claiming under the policy, if the act was one of suicide, from setting up the condition of mind of the party committing it, and contending that it was an involuntary act of suicide. But still it must be a suicide, and who would contend that the taking of poison by mistake, or any other act which a sane person might innocently commit, though it should result in death, was what is ordinarily understood as self-destruction

or suicide? It is unreasonable to suppose that one effecting an insurance upon his life, in stipulating against death by his own hand or act, could intend to embrace such a casualty, or that the insurance company could fairly expect him so to understand.

There was no pretense of insanity in the present case. The evidence was such that the jury could reasonably find that the deceased considered that he could with safety take the medicine as he did, and that he took it with the intention of better preparing himself for his duties on the next day, and without any intention of injury to himself. In fact, it is difficult to find any thing in the case to lead to any different conclusion. Still, the judge submitted to the jury the question whether the deceased took the medicine knowing its effect, and did it for the purpose of destroying his own life. But we think that the judge was correct in further charging that if the jury found that the deceased took the medicine without such knowledge or intent, and through mistake or accident, he was not shown to have died by his own hand or act within the meaning of the policy. This is the substance of the proposition excepted to, and we are of opinion that no error was committed.

The judgment should be affirmed.

All concur, except FOLGER, Ch. J., absent.

Judgment affirmed.