IDA M. PAUL, AS ADMINISTRATRIX, ETC., OF MATTHEW L. PAUL, DECEASED, APPELLANT, *v.* THE TRAVELERS' INSURANCE COMPANY, RESPONDENT.

*Accident insurance policy — death from breathing illuminating gas is covered by — an external sign only required in cases where injury does not result in death — meaning of expression " inhaling gas."*

This action, brought upon a policy of insurance issued by the defendant to the intestate, indemnifying him " against loss of time \* \* \* from the happening of such accident and injury as shall, independently of all other causes, immediately and wholly disable and prevent him from the prosecution of any and every kind of business by reason of bodily injuries effected \* \* \* *through external, violent and accidental means,* or in the event of death, occasioned by bodily injuries received as aforesaid." By such policy it was further provided that the " insurance shall not extend to any *bodily injury* of which there shall be *no external and visible sign upon the body of the insured* \* \* \* nor by *the taking* of *poison,* contact with poisonous substances, or *inhaling* of *gas,* or by any surgical operation or medical treatment." While the policy was in force the intestate died accidentally at a hotel in New York city from breathing, in his sleep, illuminating gas, which in some way escaped in his room.
*Held,* that the death was caused by " external, violent and accidental means," within the meaning of those words as used in the policy.
*Hill* v. *Hartford Accident Insurance Company* (22 Hun, 187) not followed.

That the "external and visible sign upon the body of the insured" was only required to exist in cases of bodily injuries which did not result in death.

*It seems* that the dead body itself was an external and visible sign of an injury which must have caused the death.

That the words "inhaling of gas," among the various provisions exempting the defendant from liability, were used to designate only those common uses of gas existing in dentistry, surgery, etc., and did not include the case of the intestate.

APPEAL from a judgment, entered in Onondaga county, upon the trial of this action by the court without a jury, dismissing the plaintiff's complaint, with costs.

*W. S. Andrews*, for the appellant.

*Louis Marshall*, for the respondent.

BOARDMAN J.:

This is an appeal from a judgment rendered upon a decision of the justice upon an agreed state of facts, a jury having been waived. The action was upon a policy of insurance issued by the defendant to the intestate indemnifying to the amount of fifteen dollars per week for loss of time from accidental injuries suffered, and in the case of death occasioned by injuries of a certain character agreeing to pay his legal representatives $3,000. While said policy was in force the intestate died accidentally at a hotel in New York city from breathing, in his sleep, illuminating gas, which in some way escaped in his room. He was found dead in his bed and it was evident that his death was caused by his unconscious breathing of such gas in his sleep.

To sustain this judgment dismissing the complaint with costs the defendant relies upon two conditions of the policy, each of which is urged as fatal to plaintiff's action. The policy provides as follows: The defendant indemnifies "against loss of time * * * from the happening of such accident and injury as shall independently of all other causes, immediately and wholly disable and prevent him from the prosecution of any and every kind of business by reason of bodily injuries effected * * * through external, violent and accidental means; or in the event of death, occasioned by bodily injuries received as aforesaid," etc. By such policy it is further provided, that the "insurance shall not extend to any

*bodily injury* of which there shall be *no external and visible sign upon the body of the insured;* ⸱ \* \* \* *nor by the taking of poison,* contact with poisonous substances, *or inhaling of gas,* or by any surgical operation or medical treatment; nor to any case except where the injury is the proximate and sole cause of the disability or death."

Was the death of intestate caused by or through "external, violent and accidental means" within the language of the policy? That it was accidental is found by the judge. But for the case of *Hill* v. *Hartford Accident Insurance Company* (22 Hun, 187) we should say the death was due to external and violent means, as clearly as drowning or poison introduced into the system. The cause of the death came from the outside as surely as would a fatal rifle ball or water in case of drowning. The escape of gas into the room was violent in the same sense that would be the flow of water into a wrecked vessel. In either case the external means constitute the cause which produces death. It is a violent death, produced by an external power, not natural. Some poisons, such as opium or chloral, produce no violent action upon the human system. The man who descends into a well of carbonic acid gas is killed with no greater violence perhaps than was the intestate. Yet in all these cases the result would be called a violent death.

Was there no external and visible sign upon the body of the insured of any bodily injury, and if so is that language in the policy applicable in case of death or only to injuries through which weekly allowances are asked? It would seem as though the dead body was an external and visible sign of an injury which must have caused the death. The injury may have been due to accident or disease but the visible and recognized evidence is present in the corpse.

But waiving that view, we think the external and visible signs of bodily injury need exist only in cases of injuries which do not result in death. Where the insured claims loss of time by reason of injuries, there must be some external and visible sign upon his body for the purpose of avoiding the false and fraudulent claims which might otherwise readily be imposed on the company by dishonest men. But no such protection is required in case of death. That cannot be successfully feigned to accomplish a dishonest pur-

pose. The reading of the policy shows two grounds upon which claims may be founded, the one injuries not resulting in death, for which there is a weekly allowance by way of compensation, if upon the body there are external and visible signs of the injury, and the other is the case of death, "occasioned by bodily injuries received as aforesaid;" that is, "through external, violent and accidental means." This language is not qualified by the proviso afterwards contained in the policy, that "this insurance shall not extend to any *bodily injury* of which there shall be no external and visible sign upon the body of the insured." That proviso relates to injuries not producing death, and not to death from injuries. (*Mallory* v. *The Travelers' Ins. Co.*, 47 N. Y., 52.)

We also think the words "inhaling of gas," among the various provisions exempting defendant from liability, were used to designate those common uses of gas in dentistry, surgery, etc. The connection in which the words are used gives the same impression. The insurance shall not extend to a death caused "by the taking of poison, contact with poisonous substances, *or inhaling of gas, or by any surgical operation or medical treatment*," etc. Evidently an exemption from death caused by a surgical operation, was not broad enough to include the use of anasthetics preparatory to the operation. It contemplated a voluntary and intelligent act by the assured, not an involuntary and unconscious act.

It is difficult to distinguish the case under consideration from *Hill* v. *Hartford Insurance Company* (*supra*). But the interpretation there given was by a divided court, and was, as it seems to us, so literal as to lose sight of the purpose and intent of the parties. The language used is capable of the construction given, but it leads to consequences which we cannot think were within the meaning of the parties to the contract. It does not seem possible that a death, caused as was the present, was not intended to be covered by this policy. A death by choking would leave no external or visible sign upon the body; neither would suffocation by gases in a burning building, or drowning, or charcoal fumes, or poison feloniously administered or taken by accident. If deaths caused by such means were not covered by this policy it was a delusion and a snare. If the language of the policy is capable of two constructions that most favorable to the insured should be adopted. It will not do to

sacrifice the substance of the contract to the letter if such a result can be reasonably avoided. " Conditions and provisos in policies of insurance are to be construed strictly against the underwriters as they tend to narrow the range, and limit the force of the principal obligation." (*Hoffman* v. *Ætna Ins. Co.*, 32 N. Y., 405.) A provision of a policy of fire insurance, forfeiting it if the property becomes *in any way* incumbered without the consent of the company written on the policy, does not include or refer to incumbrances by judgment or by operation of law *in invitum*, although such incumbrances are within the letter of the contract of insurance. (*Baley* v. *Homstead Ins. Co.*, 80 N. Y., 21.) Nor will a condition of a life policy avoiding it if the insured " died by his own hand or act, voluntarily or otherwise " exempt a company from liability in case of a purely accidental death caused by poison taken by the assured through mistake or ignorance. (*Penfold* v. *Universal Ins. Co.*, 85 N. Y., 317.) Yet the strict literal reading of the words used would include such a case. To the same effect are *Colt.* v. *Phœnix Fire Insurance Company* (54 N. Y., 595) and *Dilleber* v. *Home Life Insurance Company* (69 id., 256). The cases sustaining this view are numerous and the principle will not be controverted.

Construed with reference to this rule of law and analogous decisions of courts, we conclude that the learned judge at circuit erred in holding that the policy did not extend to and cover a death by such an accident as the present. The case of *Hill* v. *Hartford Insurance Company* might well have justified such conclusion, but after a careful examination we think the rule there laid down was too strict and should have been modified in accordance with the purposes and intent of the parties and the rules of interpretation of such contracts to which attention has been called. The opinion of Mr. Justice FOLLETT in that case and the authorities by him cited produce a conviction that an accidental death under the circumstances of the present case constituted a good cause of action under defendant's policy.

The judgment must be reversed and a new trial granted, with costs to abide the event.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment reversed and new trial ordered, with costs to abide the event.