MITTERWALLNER v. SUPREME LODGE, KNIGHTS & LADIES OF THE GOLDEN STAR.

(City Court of New York, General Term. March, 1902.)

1. LIFE INSURANCE—DEFENSES—SUICIDE—BURDEN OF PROOF.
   In an action on a life policy, where defendant alleged payment and that insured committed suicide, the burden of proving such allegations was on defendant.

2. PLEADING—ANSWER—DENIAL IN HÆC VERBA.
   A denial in the precise language of the complaint is not permissible.

3. SAME—MISSPELLING OF PROPER NAME—AMENDMENT.
   In an action on a life policy, where an "n" was incorrectly substituted for an "r" in the spelling of insured's name in the complaint, the allowance of an amendment at the close of the evidence correcting the error in spelling was proper.

4. SAME—SUICIDE—SUFFICIENCY OF EVIDENCE.
   In an action on a life policy it was shown that the wife of insured said at the time of his death that she had been afraid he would commit suicide, and there was evidence that a bottle which had contained carbolic acid was found in the house when deceased died, that there were marks of the acid in his mouth, and a physician testified that the cause of the death was carbolic acid poisoning. There was no evidence that the acid was self-administered, or taken with suicidal intent. *Held* not to show suicide as a matter of law.

5. SAME—INSTRUCTIONS.
   In an action on a life policy, where defendant alleged suicide, a charge that suicide was a moral offense and also a crime, that these facts should be considered by the jury, "because, if deceased committed suicide, it was a reflection on his family," and that "suicide was too

odious to be presumed," was not erroneous, but merely calculated to impress the jury with the gravity of the issue, and explain the burden of proof.

Appeal from trial term.

Action by Louis Mitterwallner against the Supreme Lodge, Knights and Ladies of the Golden Star. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before SEABURY, DELEHANTY, and McCARTHY, JJ.

W. R. Spooner, for appellant.

M. Strassman, for respondent.

SEABURY, J. This action was brought to recover a balance alleged to be due under a "beneficiary certificate." The certificate was issued to the husband of the plaintiff, and provided that in the event of his death $1,000 should be paid to his wife. The laws of the defendant provided that:

"The claims of members committing suicide (sane or insane) shall be paid as follows: If suicide occurs within the period of five years after receiving a certificate, 25 per cent. of the face value of the certificate shall be paid to the beneficiary or beneficiaries; after five years, and up to ten years, 50 per cent.; after ten years and ever after, 75 per cent. of the face value of the certificate, together with the return of all assessments collected over ten per month, as per schedule of rates."

The "beneficiary certificate" was issued in 1886. The insured died July 23, 1900. The defendant claimed that his death was caused by suicide, and paid the plaintiff $796.64, being 75 per cent. of the amount named in the certificate and certain assessments which the insured had paid.

The plaintiff's name and the name of the insured were incorrectly spelled "Mittenwallner" in the complaint, and the plaintiff was permitted to amend by changing the name to "Mitterwallner." The answer of the defendant denies in hæc verba all the allegations of the complaint as to Mittenwallner, and for separate defense admits that the certificate was issued to Mitterwallner, and pleads payment and suicide by the insured as a defense. The defendant contends that the court erred in permitting an amendment as to name at the close of the testimony, and in holding that under the pleadings before amendment the defendant must maintain the affirmative, and in denying the motion to dismiss the complaint.

The burden of proving payment and death by suicide was upon the defendant, and the trial justice properly so decided. Harms v. Insurance Co., 67 App. Div. 139, 73 N. Y. Supp. 513. Indeed, the defendant does not seem seriously to dispute this, but relies upon the technical objection that up to the time that the court made these rulings the complaint had not been amended, and that the answer denied all the allegations of the complaint as to Mitterwallner. The denial in hæc verba contained in the answer is neither a prescribed nor permissible form of denial. The answer did not, therefore, contain a de-

nial of the allegations of the complaint.   Pascekwitz v. Richards, 37 Misc. Rep. 250, 75 N. Y. Supp. 291.

The objections made by the appellant as to the amendment in relation to the name were not only exceedingly technical, but are wholly destitute of merit.

The only question in the case which we think deserving of attention is the evidence upon the question of suicide, and the charge of the court in relation thereto.   Evidence was offered that the plaintiff at the time of her husband's death said to a police officer that she had been afraid that her husband would commit suicide.   There was also evidence that a bottle which had contained carbolic acid was found in the house when the deceased died, and that there were marks of the acid in his mouth, and the evidence of a physician that the cause of death was carbolic acid poisoning.   This evidence, while pointing to suicide, was not conclusive.   There was no evidence that the carbolic acid was self-administered, or that it was taken with the intention of committing suicide.   The evidence raised the question as to whether the deceased met his death by suicide, and the jury decided that he did not.

In Penfold v. Insurance Co., 85 N. Y. 317, 39 Am. Rep. 660, the court said:

> "The ordinary clause in life policies that the insurer shall not be liable in case the person whose life is insured shall die by his own hand or act has been repeatedly the subject of judicial construction, and it is now well settled that it is not to be construed as comprehending every possible case in which life is taken by the party's act, and that an unintentional or accidental taking of one's own life is not within the meaning of the clause. * * * But still it must be a suicide; and who would contend that the taking of poison by mistake, or any other act which a sane person might innocently commit, though it should result in death, was what is ordinarily understood as self-destruction or suicide?"

In Insurance Co. v. Nitterhouse (Ind. App.) 38 N. E. 1110, the insured was found lying on his back, with a pistol pointing toward his head and a hole in his forehead.   The jury found that death was accidental, and the appellate court, in affirming the judgment, said:

> "The real question we are called upon to determine is whether all the evidence establishes without controversy the fact that the insured committed suicide.   The burden was upon appellant to establish this issue to the satisfaction of the trial court by a fair preponderance of the evidence; and this appellant was required to do, not by a prima facie case alone, but by such proof as would withstand and overthrow all of the evidence to the contrary."

In the recent case of Harms v. Insurance Co., 67 App. Div. 139, 73 N. Y. Supp. 513, the question in issue was whether the insured had committed suicide.   It appeared from the evidence that the insured registered at a hotel at about 8 o'clock in the evening, and went to his room.   On the following morning he was found dead in the room, lying on the bed in a composed and natural attitude.   The door of the room was locked on the inside.   Three letters, written by him, the contents of which did not appear, were found in the room, one directed to his wife, one to the chief of police, and one to his employer.   **A**

box of white powder was found on the bureau, and a glass containing a sediment. A physician testified that he thought the contents of the glass was corrosive sublimate. There was evidence that if a person dies from the use of corrosive sublimate he dies in excruciating agony, and is in a state of convulsion, with his limbs drawn up and distorted. The question whether the insured met death by suicide was submitted to the jury, who found a verdict in favor of the plaintiff. The court said:

"We cannot say that at the trial of the action at bar there was any such preponderance of evidence as to require a reversal of the judgment. * * * A person reading the evidence might well doubt whether Harms 'intentionally took his life,' or whether he came to his death by the use of corrosive sublimate, and, if he did, whether he intended to use it for the purpose of suicide. * * * The question was pre-eminently one to be decided by a jury, and with their finding we do not feel called on to interfere."

Goldschmidt v. Insurance C. (Sup.) 12 N. Y. Supp. 866.

We cannot say, therefore, that the evidence offered did not justify the verdict of the jury, unless the jury were, as the appellant contends, led to reach their verdict by an improper charge of the court. The trial justice charged the jury that suicide was the intentional taking of one's own life; that it was not alone a moral offense, but that the law makes the attempt to take one's own life a crime; and that these facts should be considered by them, because, if the deceased committed suicide, "it is a reflection upon his family." The justice explained that the only purpose of his remarks was that the jury might "proceed carefully in considering the matter." The evidence was then reviewed, and the court charged the jury "that suicide is too odious to be presumed; it must be proved." The comments of the justice were not prejudicial to the defendant, and the whole charge was calculated merely to impress the jury with the importance and gravity of the issue to be determined by them. The parts of the charge which commented upon the fact that suicide was a "moral offense," and attempted suicide a crime, and that suicide was too odious to be presumed, but must be proved, were, in our opinion, proper, as explaining to the jury that the burden of proof upon this issue must be sustained by the defendant. The judgment appealed from is affirmed, with costs.

Judgment affirmed, with costs. All concur.