## J. R. KENNEDY v. AETNA LIFE INSURANCE COMPANY.

Decided February 28, 1903.

**Accident Insurance—Exempting Clause—Involuntary Taking of Poison.**

A clause in an accident policy stipulating that the insurance does not cover an accident or death resulting wholly or partially from the "voluntary or involuntary" taking of poison, exempts the insurer where the death of the insured results from the taging of a dose of poisonous medicine through mistake, as the term "involuntary," as used in the policy, is not restricted to an act forced on the insured, but properly includes acts not intentionally done.

Appeal from the District Court of Dallas. Tried below before Hon. Thos. F. Nash.

*Crane, Greer & Wharton,* for appellant.

*Harry P. Lawther,* for appellee.

RAINEY, CHIEF JUSTICE.—The following statement, taken from the brief of appellant, shows the nature and result of the suit in the lower court, to wit:

"This was a suit by J. R. Kennedy, appellant, in the court below against the defendant company, in which it was alleged substantially that the defendant company was a corporation with power to issue life insurance policies, etc. That the plaintiff was a resident of Ellis County, Texas. That the defendant company had issued an accident policy on the life of James Kennedy, on the 14th day of June, 1897, for a valuable consideration, and that it was from time to time renewed, the last renewal being on the 11th of June, 1899, and that by its renewal it insured the said James Kennedy in the sum of $3000 against death by accident, until the 14th day of June, 1900. The terms of the policy were set out with much particularity. It was further alleged that he died on the 17th of November, 1899, by accidentally taking an overdose of digitalis, a poisonous medicine, instead of a prescription left by his physician, which was not poisonous. It was alleged that there was no necessity for administration, etc., and that he died intestate, and that the plaintiff was his only brother; that the father and mother of the insured were both dead, and that the plaintiff was his only heir. The policy was attached to the petition of plaintiff, and it had a printed clause on the back thereof to the effect that 'this insurance does not cover injuries of which there is no visible mark on the body, * * * nor suicides, sane or insane, nor accident, nor death, nor loss of limb, nor sight, nor disability, resulting wholly or partially, directly or indirectly, from any of the following causes: * * * intoxication or narcotics, voluntarily or involuntarily taking poison, or contact with poisonous substances, or inhaling any gas or vapor.'

"The defendant company answered, among other thing, as follows, by special exception number 2: 'That because it appeared from the policy

sued on, attached to the petition, that the insurance does not cover an accident or death, nor disability, resulting wholly or partly, directly or indirectly, from voluntary or involuntary taking poison, or contact with poisonous substances; and because it further appeared from the petition that said Kennedy, on the 17th of November, 1899, accidentally killed himself by accidentally taking an overdose of digitalis, a poisonous medicine, instead of a prescription left by his physician.' A general demurrer was filed, that the original petition was insufficient in law.

"On September 27, 1902, the case came on on demurrer, and the court sustained the second special exception and the general demurrer above stated, and entered a judgment dismissing plaintiff's petition, to which judgment the plaintiff excepted and gave notice of appeal to this court."

The sole question for solution arises upon the proper construction of the clause of the policy exempting the insurance company from liability in certain contingencies. It is a general rule of construing insurance policies where there is any ambiguity that renders the terms susceptible of two constructions to give that construction which is most favorable to the insured, always adhering to the principle that in interpreting contracts the inquiry should be, what obligations the parties intended to assume, giving to the language used its usual signification in connection with the subject matter and the circumstances under which it was made. Thus construing the contract under consideration, is the company exempted from liability, the deceased having come to his death by unintentionally taking poison? The allegations of·the petition show that death was produced by an accident. The policy was issued to cover accidents, and unless the exemption clause is sufficiently broad and comprehensive as to cover such an accident, then the company should be held liable. The courts which have passed upon similar clauses are not in harmony, some of them going to the extreme limit in construing them against the companies. There is no reasonable theory upon which the conflict can be reconciled. We will therefore follow that line which, in our opinion, conforms to the well recognized principles governing the·construction of contracts.

Death having resulted from the taking of poison, the main contention arises from that portion of the clause which exempts the company from liability for death resulting from the "voluntary or involuntary taking poison." The appellant contends that the terms "voluntary" and "involuntary" as used in the policy do not include the "accidental" taking of poison. The taking of poison in this instance, being unintentional, was not a voluntary taking as that term is used in the policy, therefore the taking was accidental. The taking of poison being accidental, liability would accrue unless such an accidental taking is excluded by the term "involuntary." The definition or meaning of this term, as used, is limited by counsel for appellant to an act that is forced upon one, which he can not help. It is true that the term embraces that meaning. It, however, as commonly used, has a broader and more comprehensive meaning and there is nothing in the policy limiting it to the restricted sense con-

tended for by counsel. The term is defined in the Century Dictionary and Cyclopedia as, "Not voluntary or willing; contrary or opposed to will or desire; independent of volition or consenting action of mind; unwilling; unintentional." The presence of these very elements in taking the poison is what constitutes the taking accidental. Without these there could be no accident. He did not intend to take poison,—he took it by mistake; hence the taking was not willed, but unintentional, and therefore involuntary. One of the definitions given by the Century Dictionary and Cyclopedia of voluntary is "not accidental." Involuntary is an autonym of voluntary, and therefore, in this sense, includes "accidental."

It is difficult for us to conceive of a case of taking poison that is not included in either the term "voluntary" or "involuntary" as used in the policy. The usual and ordinary meaning of the terms would include, in one or the other, every manner of taking poison, therefore we do not feel warranted in giving to them a meaning less restricted than they usually import. The policy in this case does not confine the exemption to self-destruction, as in the case of Penfold v. Insurance Co., 85 N. Y., 317, cited by appellant. The exemption is broader in its scope. It not only names suicide, but also specifies accident, death, etc., "resulting wholly or partially, directly or indirectly, from * * * voluntary or involuntary taking poison." This, we think, includes any accident or death resulting in any manner whatever from the taking of poison.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.