DALLIE L. RILEY, Appellant, v. INTER-STATE BUSINESS MEN'S. ACCIDENT ASSOCIATION, Appellee.

**INSURANCE:** Involuntary Taking of Poison. Exemption from liability for death resulting from poison *"voluntarily or involuntarily* taken," etc., embraces a purely accidental taking—a taking which is independent of any consenting action of the mind.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

NOVEMBER 22, 1918.

ACTION upon an accident policy. Judgment for defendant.—*Affirmed*.

*Tourtellot, Donnelly & Swab,* and *Edwards, Longley, Ransier & Smith,* for appellant.

*Dunshee, Haines & Brody,* for appellee.

STEVENS, J.—This case is before us on a second appeal. A demurrer to plaintiff's petition was sustained by the district court, and judgment entered against plaintiff for costs. Upon appeal, an opinion affirming the judgment was first filed. Upon rehearing, a different conclusion was reached, and the judgment reversed. 177 Iowa 449. A substituted petition was then filed, and a trial had upon the merits, resulting in the dismissal of plaintiff's petition and judgment in favor of the defendant for costs. The case was tried upon an agreed statement of facts, from which it appears that the insured, on January 16, 1912, went to a drug store in Germania, Iowa, owned

and conducted by one Dr. T. S. Waud, a regularly licensed and practicing physician and surgeon, and stated to him that he was still suffering from a bowel trouble, for the alleviation of which he had previously obtained Squibb's Cholera Mixture, and requested Dr. Waud to mix him up a "hot one,"—by which the doctor understood him to mean a strong dose of Squibb's Cholera Mixture. The mixture was poured by the druggist into a graduate, from which the same was drunk by deceased.

It is further stipulated that Squibb's Cholera Mixture did not contain strychnine, or other drug producing the effect thereof, but that it did contain tincture of opium and chloroform, both of which are poisonous. In less than an hour after taking the mixture, insured went into convulsions, and died. It is conceded that his death was due to poison from strychnine received in the mixture. The presence of strychnine in the mixture is not accounted for. No claim is made by counsel for appellee that deceased committed suicide, or that he consciously or intentionally took a fatal dose of poison. For defense, defendant relied upon the following, among other provisions of the policy, to wit:

"This association shall not be liable to any member of the accident department, nor to any person claiming by, through or under any certificate issued to a member, for the payment of any benefits or indemnity on account of disability or death resulting from poison *voluntarily or involuntarily* taken, administered, absorbed or inhaled."

Counsel for appellant appear to rely, to some extent, upon our former decision in this case, to sustain their claim. Nothing said in our former opinion is in any way inconsistent with what is here said, as is apparent from the following extracts therefrom. In its first opinion, the court proceeded to dispose of the case upon the facts stated in the petition and deemed admitted by the demurrer; but, upon rehearing, the conclusion was reached that the demurrer

was improperly sustained by the court, and the judgment was reversed. Upon this question, the court said:

"We add that the demurrer admitted the statement in exhibits that the death was due to accidental poisoning. We should not now decide, and do not, whether accidental poisoning is or is not the voluntary or involuntary taking of poison, within the meaning of the provisions of this certificate. We hold that the petition does not show affirmatively any of the defeasances upon which appellee relies. We are of opinion that there should be a trial on the petition, and that defendant may thereon show, if it can, that the death resulted from conditions which defeat recovery under the contract." *Riley v. Inter-State Business Men's Acc. Assn.*, 177 Iowa 449.

Referring to the foregoing exception, the court further said:

"The words that single out the voluntary or involuntary taking of poison were put into the contract by the defendant, and it must be assumed that they were intended to be effective, and to state the exemptions of defendant to the uttermost extent intended. Therefore, they cannot mean that the naked fact of death by poison absolves from liability. It must have been intended there could be some deaths from poison for which defendant is liable. Had it been the intention that the mere fact that death was due to poison defeated recovery, a statement that the defendant was not liable if death so resulted would have been plenary, and would have covered any death from poison, no matter how caused. If that was the intent, it is peculiar it should be effectuated by a provision that there should be an exemption if the poison was taken voluntarily or involuntarily, which was merely the stating of part, where all was intended. It follows that an admission which admits no more than that death may have been caused by strychnine is not an affirmative admission that the poison

was taken either voluntarily or involuntarily. This follows because, as said, the very language of the contract recognizes that there may be poisoning from poison which was taken neither voluntarily nor involuntarily."

For the purpose of what is here said with reference to the above exceptions, we may assume that the death of the insured was effected solely by external, violent, and accidental means, the contention of counsel for appellee being that insured died from the effect of strychnine poison, "voluntarily or involuntarily taken" by him, and that no recovery can, therefore, be had on the policy. Many different clauses in policies providing indemnity for accidental death have been considered by the courts of last resort, but the language used in the exception under consideration appears to have been considered in but few cases.

The Supreme Court of Illinois, in *Travelers' Ins. Co. v. Dunlap,* 160 Ill. 642 (43 N. E. 765), in considering a clause in an accident policy providing exemption for liability in case death resulted "wholly or partly, directly or indirectly, from * * * taking poison, contact with poisonous substances, inhaling gas, etc., * * * "  held that the foregoing language referred to death from poison voluntarily or intentionally taken, and did not include a case where death resulted from accidental poisoning. And again, in *Metropolitan Acc. Assn. v. Froiland,* 161 Ill. 30 (43 N. E. 766), the same court similarly construed the following clause: " 'I agree that the insurance shall not be held to extend * * * to poison in any way taken, administered, absorbed or inhaled,' " and held that the words "in any way taken" related to the mode or manner in which the poison was taken, and not to the motive of the insured in taking it.

In *Paul v. Travelers' Ins. Co.,* 112 N. Y. 472 (20 N. E. 347), the insured met his death from gas escaping into a

room in a hotel in which he was sleeping.    The poison clause contained in the policy was as follows:

"Provided, always, that this insurance shall not extend * * * to any death or disability which may have been caused * * * nor by the taking of poison, contact with poisonous substances or inhaling of gas. * * *"

The court, in the course of the opinion, said:

"But, in expressing its intention not to be liable for death from 'inhaling of gas,' the company can only be understood to mean a voluntary and intelligent act by the insured, and not an involuntary and unconscious act. * * * To hold that the death of plaintiff's intestate was caused by the inhaling of gas, within the meaning of this policy, would be to construe its terms contrary to the usual import of language, and in fact to hold against the finding that the death was not accidental."

The Supreme Court of Pennsylvania, in *Pickett v. Pacific Mut. Life Ins. Co.*, 144 Pa. 79 (22 Atl. 871), construing a similar clause, adopted the same construction. To the same effect, see *Fidelity & Cas. Co. v. Lowenstein*, 97 Fed. 17; *Travelers' Ins. Co. v. Ayers*, 217 Ill. 390 (75 N. E. 506).

Many more cases of similar import are reported. It will be observed that, in each of the above cases, the court limited the application of the exception to cases in which the poison or gas was voluntarily taken or inhaled, and declined to give effect thereto in cases where it was shown that death resulted from the unconscious or involuntary taking of poison, or inhalation of gas. The language of the clause in the case at bar provides exemption from liability from death resulting from poison "voluntarily or *involuntarily* taken." It is conceded that deceased did not voluntarily or intentionally take poison. Strychnine in sufficient quantity to produce death in some unknown manner got into the mixture which deceased drank from a

graduate in the drug store, and was unintentionally taken by him. In *Kennedy v. Aetna Life Ins. Co.,* 31 Tex. Civ. App. 509 (72 S. W. 602), the Texas Court of Appeals, construing the identical language under consideration, said:

"Death having resulted from the taking of poison, the main contention arises from that portion of the clause which exempts the company from liability for death resulting from the 'voluntary or involuntary taking poison.' The appellant contends that the terms 'voluntary' and 'involuntary,' as used in the policy, do not include the 'accidental' taking of poison. The taking of poison in this instance, being unintentional, was not a voluntary taking, as that term is used in the policy; therefore, the taking was accidental. The taking of poison being accidental, liability would accrue, unless such an accidental taking is excluded by the term 'involuntary.' The definition or meaning of this term, as used, is limited by counsel for appellant to an act that is forced upon one,—which he cannot help. It is true that the term embraces that meaning. It, however, as commonly used, has a broader and more comprehensive meaning, and there is nothing in the policy limiting it to the restricted sense contended for by counsel. The term is defined in the Century Dictionary & Cyclopedia as, 'Not voluntary or willing; contrary or opposed to will or desire; independent of volition or consenting action of mind; unwilling; unintentional.' The presence of these very elements in taking the poison is what constitutes the taking accidental. Without these, there could be no accident. He did not intend to take poison,—he took it by mistake; hence, the taking was not willed, but unintentional, and therefore involuntary. One of the definitions given by the Century Dictionary & Cyclopedia of 'voluntary' is 'not accidental.' 'Involuntary' is an antonym of 'voluntary,' and therefore, in this sense, includes 'accidental.' It is difficult for us to conceive of a case of taking poison that it not included in either the

term 'voluntary' or 'involuntary,' as used in the policy. The usual and ordinary meaning of the terms would include, in one or the other, every manner of taking poison; therefore, we do not feel warranted in giving to them a meaning less restricted than they usually import."

The New York Court of Appeals, in *Porter v. Preferred Acc. Ins. Co.*, 186 N. Y. 599, affirmed the holding of the lower court reported in 95 N. Y. Supp. 682, that death from gas involuntarily inhaled by deceased while sleeping in a room in a hotel, came within the exception of a policy providing exemption from liability in case death resulted from "the voluntary or involuntary inhalation of any gas or any anesthetic, or injury fatal or nonfatal, resulting from any poison or infection accidentally or otherwise taken, administered, absorbed or inhaled."

As bearing upon the question here presented, attention is also called to the following cases: *Early v. Standard Life & Acc. Ins. Co.*, 113 Mich. 58 (71 N. W. 500); *Pollock v. United States Mut. Acc. Ins. Co.*, 102 Pa. 230; *Kasten v. Interstate Casualty Co.*, 99 Wis. 73 (74 N. W. 534).

There is a long line of authorities in harmony with *Paul v. Insurance Co.*, supra, and like cases cited; but the language of the policy involved in none of them was identical with that in the case at bar. As suggested, the basis for the holding in each of this line of cases is that the clause excepting the insurer from liability was designed to cover only cases where the poison was consciously or voluntarily taken. Nothing is contained in any of them to indicate that the conclusion would not have been different if the clause had specifically exempted the insured from liability for death resulting from poison voluntarily or *involuntarily* taken. The word "involuntary," as defined in Funk & Wagnall's New Standard Dictionary, means:

"Lacking will or power to choose; not under the con-

trol of the will or volition; taking place independently of one's will or volition; not willed."

Deceased could not have intended to take a fatal dose of strychnine. He did not voluntarily do so. Its presence in the mixture was unknown to him. There was no exer- cise of the volition or will in the act of taking the poison, except in so far as the same was a necessary part of the tak- ing of the concoction. The poison was taken independently of his will or volition, and, therefore, involuntarily. Thus construed, the language employed in the exception con- tained in the policy is given its usual and ordinary mean- ing. We cannot, therefore, escape the conclusion that the poison contained in the mixture, which caused the death of deceased, was involuntarily taken by him, and that the facts bring the case clearly within the exception of the pol- icy, and that no recovery can be had thereon. As what is here said disposes of the case, other questions argued by counsel need not be considered. The judgment of the court below is, therefore,—*Affirmed.*

PRESTON, C. J., LADD, EVANS, and GAYNOR, JJ., concur.