### NEW YORK LIFE INS. CO. v. MURRELL et al.

### No. 6708.

Circuit Court of Appeals, Fifth Circuit.

June 27, 1933.

Frederick G. Thatcher, Elmo P. Lee, and Robert A. Hunter, all of Shreveport, La., for appellant.

Howard B. Warren, Joseph D. Barksdale, and Julius T. Long, all of Shreveport, La., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

This is an action on a double indemnity provision of a $5,000 life insurance policy. The beneficiary, John A. Kennedy, recovered judgment in the District Court, but died pending this appeal, and, upon appropriate suggestion, his next of kin have been substituted as appellees.

Double indemnity is payable upon proof that the death of the insured "resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means." But the policy contains a clause which exempts the insurer from liability for double indemnity, "if the Insured's death resulted from self-destruction, whether sane or insane; from the taking of poison or inhaling of gas, whether voluntary or otherwise, ° * * or, directly or indirectly, from infirmity of mind or body, from illness or disease, or from any bacterial infection other than bacterial infection occurring in consequence of accidental and external bodily injury." The original petition acknowledged payment of the face of the policy, and, as a basis for the asserted right to recover double indemnity, alleged that the insured died "from poisoning produced by impure and contaminated food accidentally eaten." An amended petition, without withdrawing that allegation, disclaimed an intention to allege that the insured had taken poison in his food, but alleged by way of explanation that the word "poisoning" was used in the sense that "food poisoning" is generally used to describe an injurious effect of food eaten naturally and normally. The amended petition then proceeded to plead plaintiff's evidence by stating that the insured had eaten lunch, consisting in part of cold ham, potato salad, and a beverage called Budweiser, and that what he ate and drank "was impure and contaminated in that it was unwholesome and indigestible in the insured's system, without his knowledge, and caused violent irritation, erosion and injury to insured's stomach and intestines." The evidence is not in the record, and the only assignment of error open for consideration is one which complains of the overruling of appellant's exception of no cause of action. Not even the insurance policy, which was an exhibit to the petition, nor the part of it that is material to this controversy, is printed in the record; only photostatic copies of the policy outside the record are separately brought up, in flagrant violation of our rules. Stephenson v. National Bank (C. C. A.) 39 F.(2d) 16. We would be justified in dismissing the appeal but for the fact that the terms of the double indemnity provision as set forth in the answer are not in dispute. Because and only because there is no doubt suggested or question raised as to the exact language of that provision, we feel at liberty to pass upon the sufficiency of the petition as amended.

Although bodily injury resulting from food poisoning is an internal injury, it is generally held that the food which causes it is a violent and external means. Newsoms v. Commercial Casualty Insurance Co., 147 Va. 471, 137 S. E. 456, 52 A. L. R. 363. Nor have we any doubt that the death of one who dies from eating impure food which he mistakenly believes is wholesome is caused by accidental means. See Christ v. Pacific Mutual Life Ins. Co., 312 Ill. 525, 144 N. E. 161, and note to that case in 35 A. L. R. 737. The amended petition alleges not that impure food was the sole cause of death when eaten, but only that it became impure, contaminated, and poisonous to the insured after he had eaten it. If that be true, the food was not the sole external cause of death, for a contributing internal cause was the physical condition of the insured. But we may assume in favor of appellees the truth of the allegation contained in the original petition, which was never withdrawn, to the effect that death resulted solely from poisoning produced by impure food. This policy, unlike many policies under consideration in cases referred to in the briefs, does not stop with the promise to pay in the event of death effected solely through external, violent, and accidental

means; but it goes much further and exempts the insurer from liability for death by or regardless of such means, provided death results from any one of several specially enumerated and excepted causes. In policies containing double indemnity provisions and also exemption clauses, the latter vary so widely that a decision in one case may not be in point in another. In Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S. W. 745, 746, 64 L. R. A. 349, 104 Am. St. Rep. 857, 1 Ann. Cas. 252, the exemption clause excluded liability for death "resulting from poison, or anything accidentally * * * taken." The cause of death was eating spoiled oysters. The court said that, if the oysters were poisonous, the death was within the exception of poison taken; if they were not, the cause of death was brought within the exception of "anything" taken. In Hawkeye Association v. Christy (C. C. A.) 294 F. 208, 40 A. L. R. 46, death resulted from inhaling fumes from lighted sulphur candles. It was held that there was no liability because of an exemption clause which excluded death resulting from poisonous gases, etc., taken or inhaled accidentally or otherwise. These two cases are more strongly relied on by appellant than any others. We do not think either one decided the question involved in this case. Of the causes of death exempted from the double indemnity provision of the policy in suit only two are material. The first relates to taking of poison whether voluntarily or unintentionally, and the other to bacterial infection not occurring in consequence of accidental and external bodily injury. There was no external bodily injury, and so we are not concerned with the exception which appears in the exemption clause. As words are commonly used and understood, the taking of poison is a very different thing from eating impure food. The word "poison" as used in this exemption clause was intended, as it seems to us, to designate a well-known poison such as arsenic or strychnine. The exemption clause itself recognizes and draws a distinction between poison and bacterial infection. And so we think the petition should not be held to allege that the insured died from the taking of poison. However, if the petition as amended be construed as alleging death from food poisoning, that is only another way of saying that death was due to bacterial infection, which is another cause of death for which the insurer was not liable. Medical authorities cited by both sides agree that the prime cause of putrefaction of food is a species of bacteria. See, also, Century Dictionary. Some-

times the bacteria in food will cause the death of a healthy person; at other times the bacteria multiply in the system and cause death because the acids in the body are not strong enough to overcome the bacteria in the food. The death of the insured was due to bacterial infection whether the bacteria in the food alone was responsible for it, or whether the physical condition of the insured contributed to the infection. In either event there could be no recovery under the terms of the double indemnity clause of the policy.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

SIBLEY, Circuit Judge (concurring).

I think the opinion puts too narrow an interpretation upon the words, "the taking of poison whether voluntary or otherwise." It makes no difference whether the thing taken is a well-known poison or not, if it proves to be in fact poisonous. The Standard Dictionary defines a poison as "Any substance that, when taken into the system, acts in a noxious manner by means not mechanical tending to cause death or serious injury to health." Webster's International Dictionary puts it: "Any agent which when introduced into the animal organism is capable of producing a morbid, noxious or deadly effect upon it." Things which in good condition are foods, when so impure or contaminated by bacteria or otherwise as to cause the effects stated in the definitions, are poisonous. One who eats or drinks them, although unknowingly, has accidentally taken poison. If the effect of poison of any sort be slow and insidious, there is lacking the element of violence necessary to bring a resulting death within the policy. But, if the effect is sudden, causing "violent irritation, erosion and injury to insured's stomach and intestines," the cause of death is violent enough, but only the more clearly a poison. It was only by a strained construction not intended by insurers that death from internal poison was at first included under accident policies, and the exceptions inserted in this policy were put there to exclude deaths from such obscure causes. The case here is on the horns of a dilemma. If what the insured ate was by itself capable of producing the sudden, violent, and fatal effects that followed, it was poison. If the results came about because of some disease of his own system at the time, what he ate was not the sole cause of the death independently of all other causes. Ryan v. Continental Casualty Co. (C. C. A.)

47 F.(2d) 472. In either case the death was not within the double indemnity clause.

HUTCHESON, Circuit Judge (concurring).

The misgivings I have had about this case have arisen out of the fact that the evidence is not before us, and I have had some doubt whether plaintiffs' pleadings in and of themselves, put them out of court.

A reading of the opinions of my associates, one insisting that the pleadings allege death by poison, the other that they allege death by bacterial infection, has put these doubts at rest. It has convinced me that the effect of plaintiffs' allegations is to make out a case of death either from poison or from bacterial infection. Without undertaking then, as my brothers have so valiantly done, to determine which of the excepted causes of death is alleged, I find it sufficient to say that, as amended, the pleading makes out a case of death from either the one or the other of them, and is therefore demurrable.

I concur in the result.