## PRICE–WILLIAMS v. NEW YORK LIFE INS. CO.*

### No. 8943.

Circuit Court of Appeals, Fifth Circuit.

Feb. 7, 1939.

*Rehearing denied March 17, 1939.

James M. Carson, of Miami, Fla., for appellant.

O. O. McCollum, Charles Cook Howell and J. L. Doggett, all of Jacksonville, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is an action under the double-indemnity clauses of three life insurance policies, which bound the Company to pay twice the face amount of each policy if death of the insured resulted, directly and independently of all other causes, from bodily injuries effected solely through violent, external, and accidental means; provided, double indemnity was not payable if death resulted from the taking of poison, whether voluntary or otherwise.

The sole question for our decision upon this appeal is presented by the action of the court below in peremptorily directing the jury to return a verdict for the appellee. This ruling was predicated upon the theory that death resulted from the taking of poison, and, therefore, was not covered by the policies.

The insured was forty-nine years of age at the time of his death. He had been a heavy drinker of whiskey for about eight years prior to 1925, when he had a nervous breakdown and quit drinking. Thereafter, he began taking tablets of strychnine as a heart stimulant, one or two a day for a period, and then one or more three or four times a day until May 9, 1932. On that day, he had lunch, and, about 3:30 in the afternoon, went to a hotel to lie down, saying to the clerk that he was tired and needed a few hours of rest. Upon being assigned a room, he requested the clerk to have him called at 8 p. m. Between 8:30 and 9 o'clock on the evening of the same day, he was found in his hotel bedroom with an empty bottle, formerly containing strychnine-sulphate tablets, and a pint bottle of moonshine whiskey, half of which was gone. He had been dead two or three hours, and there was an odor of alcohol about his body. When the deceased was found, his body was lying on the floor between the wall and the bed. His head was in the direction of the foot of the bed. He had his clothes on, or, at least, his pants. His watch was on the dresser, also some nickels and dimes, and on a piece of paper was his wife's name and address.

Three doctors testified. Two of them had been called to the hotel and had examined the body. One of them was unable to give an opinion as to the cause of death. The other was positively of the opinion that the insured died from an overdose of strychnine. He reached this conclusion from an examination of the body and its "characteristic appearance," which he said indicated cyanosis, by which he meant that the features were livid and discolored, blue and dark red.

The appellant's contention is that death resulted accidentally from the taking of non-lethal quantities of strychnine and moonshine whiskey; that both were taken for the purpose of stimulating the body; that, taken alone, neither would have injured the insured, but that the chemical reaction of the alcohol with the strychnine produced a heart shock, which alone caused his death, the same being effected solely through external, violent, and accidental means.

To support this theory, appellant placed upon the stand a physician who specialized in pathology, and who, at her request, made experiments to ascertain the effects upon an animal organism of the combination of whiskey and strychnine. He examined the literature upon the subject and found there was little known about it. He then undertook experiments upon five or six dogs, using strychnine, corn whiskey, and sometimes grain alcohol. He said there was no general medical opinion on the subject, but, as a result of his experiments, his opinion was that the two in combination might be fatal when either alone would be safe; that whiskey gets into the

tissues and serves to activate or stimulate the action of the strychnine; that, in small doses, strychnine is used as a medicine, and, when taken in non-fatal doses, the effect of combining it with whiskey may be dangerous and even fatal, especially because strychnine accumulates in the body when taken over a period of years. In answer to a hypothetical question, he said that, in his opinion, death in the instant case was caused by a combination of the action of corn-whiskey and strychnine poisoning.

The evidence is uncontradicted that strychnine is a poison and a peculiar drug; that, unlike morphine, strychnine builds up tissue, and, the more a patient uses it, the less it takes to stimulate him; that any man who has been taking strychnine for five years or more has stored up in him a considerable quantity of an accumulative type.

The word, poison, as used by the parties to the contract of insurance, was intended to have its common and ordinary meaning. It clearly includes strychnine, if taken in doses capable of producing death. If the insured took strychnine and lived, his rights under the policies were not enhanced or diminished, but, if he took it and died from the effects thereof, the double indemnity was not payable. This is true even if he took it with whiskey and did not know the probable effect of the combination, or was ignorant of the fact that strychnine was accumulating in his body, and that it would take less and less to kill him, especially with the accelerating action of the whiskey.

The only fair and reasonable inference from the testimony in this case is that death resulted from taking poison, or, at least, that such taking was a proximate and material cause which directly contributed to the result. Death from this cause, whether voluntary or otherwise, was excepted from the double-indemnity provisions of the policies. There being no conflict in the testimony on this issue, and no reasonable basis in the evidence for different inferences therefrom by fair jurors, the court committed no error in directing a verdict for appellee. New York Life Ins. Company v. Murrell, 5 Cir., 65 F.2d 990; Preferred Accident Ins. Co. v. Robinson, 45 Fla. 525, 33 So. 1005, 61 L.R.A. 145, 3 Ann.Cas. 931; Kennedy v. New York Life Ins. Company, 178 Misc. 258, 172 So. 743; Riley v. Interstate Business Men's Accident Association, 184 Iowa 1124, 169 N.W. 448, 2 A.L.R. 57; Kennedy v. Aetna Life Ins. Co., 31 Tex.Civ.App. 509, 72 S.W. 602.

The judgment of the district court is affirmed.