Kasten vs. The Interstate Casualty Co. of New York.

99          73
s40 LRA  651
40 LRA 653n
42 LRA 188n
43 LRA 693n
46 LRA 450n
51 LRA 252n

KASTEN, Respondent, vs. THE INTERSTATE CASUALTY COMPANY OF NEW YORK, Appellant.

*March 3 — March 22, 1898.*

*Accident insurance: Construction of policy: Exception of poisoning.*

Under a policy insuring a person against bodily injury sustained by external, violent, and accidental means, with a provision for payment to a beneficiary or beneficiaries in case of death from such injuries within ninety days therefrom, independently of all other causes, and with a condition that the liability of the assurer shall not extend to injuries, fatal or otherwise, resulting wholly or in part from poison or anything accidentally or otherwise taken, administered, absorbed, or inhaled, *held,* that death caused by blood poisoning from the effects of the absorption into the system of septic poison evolved by the propagation of germs in cotton inserted by a dentist in wounds caused by the removal of teeth from the mouth of the deceased, to stop hemorrhage, is within the condition and creates no liability under the policy.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Action to recover on a $2,000 policy of accident and life insurance, which insured Fred A. Kasten against bodily injury sustained through external, violent, and accidental means, and provided that in case of death from such injuries within ninety days therefrom, independently of all other causes, the company should pay the sum of $2,000 to his wife, *Josephine M. Kasten,* if surviving, otherwise to his legal representatives, subject, however, to several conditions, among which was the following: " This insurance does not cover . . . injuries, fatal or otherwise, resulting wholly or in part from poison or anything accidentally or otherwise taken, administered, absorbed, or inhaled." The cause of death was alleged to be the accidental injection of septic matter, into a wound caused by the extraction of two teeth, at the time they were extracted.

Kasten vs. The Interstate Casualty Co. of New York.

At the commencement of the trial there was a demurrer *ore tenus* to the complaint, made, overruled, and the ruling duly excepted to. The evidence tended to show that the deceased, while suffering from some serious derangement of his system, which manifested itself, among other ways, by severe toothache, had two of his teeth extracted by a dentist; that there was a diseased condition of the membrane surrounding some of the teeth, and a general foul condition of the mouth; that the teeth were extracted in the usual way, but it caused a rupture of the upper maxillary artery, or a branch of it, from which a violent hemorrhage ensued, and to stop that the dentist plugged the cavities with cotton; that thereafter blood poisoning ensued from the absorption into the system of some chemical poison supposed to have been caused by the propagation of disease germs in the cotton, the seat of the affection being where the teeth were extracted. The blood poisoning progressed to a fatal determination.

At the close of the evidence both sides moved for the direction of a verdict. Defendant's motion was denied and plaintiff's granted. Judgment was entered accordingly and defendant appealed.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas.*

For the respondent there was a brief by *La Boule & Hunt,* and oral argument by *F. S. Hunt.* They argued, *inter alia,* that the unexpected and unusual rupture of an artery in the pulling of the teeth was an accident, within the meaning of the policy, and so also was the introduction of cotton containing matter which caused blood poisoning, and those accidents were the proximate causes of the death. The poisoning was one of the effects of those accidents and was a secondary cause. The policy should be construed liberally in favor of the insured. May, Ins. (3d ed.), § 175. The word "poison" in the policy refers to substances commonly known as poisons and not to any of the phenomena of septicæmia. The

exception of death by poison means poison consciously and by an act of volition drawn into the system. *Fidelity & Casualty Co. v. Waterman*, 161 Ill. 632; *Pickett v. Pac. Mut. L. Ins. Co.* 144 Pa. St. 79, 27 Am. St. Rep. 618. The word "disease" is used in the policy in a restricted sense. If it was not broad enough to cover bodily affections, such as are expressly mentioned, it would not cover "blood poisoning." Even if it was a disease, it was caused by the injury, and that injury was the proximate cause of the death. *U. S. Mut. Acc. Asso. v. Barry*, 131 U. S. 100; *Bailey v. Interstate Casualty Co.* 8 App. Div. (N. Y.), 127; *Freeman v. Mercantile Mut. Acc. Asso.* 156 Mass. 351; *McCarthy v. Traveler's Ins. Co.* 8 Biss. 362.

MARSHALL, J. The evidence goes no further than the complaint. It may be said to establish the fact of death as alleged, that is, that it was produced by the accidental planting of septic matter in the mouth of the deceased at or about the time his teeth were extracted. While the inference from the allegations of the complaint is that the introduction of the foreign substance, which subsequently caused death, into the person of the deceased, was accidental, it was nevertheless by an act to which he consented. So the rulings on the demurrer to the complaint and the motions for the direction of a verdict, all present the same question, which is, Admitting everything alleged, is plaintiff entitled to recover? Such being the case, the rulings will be considered together.

The theory upon which the complaint was sustained and the verdict directed in respondent's favor, and upon which her counsel seek to sustain such rulings, defeats them if the plain wording of the contract is to be given effect according to the obvious intention of the parties thereto. It is contended that the septic matter was accidentally introduced into the wound caused by the extraction of the teeth, by its being in the cotton with which the wound was plugged

to stop the hemorrhage; that it was absorbed from the cotton into the surrounding parts; that death was the result; and that because the poisonous substance was thus accidentally planted, the calls of the policy for an injury caused by external, violent, and accidental means were all satisfied. Whether that be so or not, and if so, whether it can be said from the evidence, as a matter of law, that death ensued from the injury independently of all other causes, so as to satisfy the terms of the policy in that regard, are not by any means free from difficulty, but they are questions unnecessary to decide, because, the injury having been admittedly caused by something accidentally taken, administered, or absorbed, and death caused in whole or in part from such circumstances, by the plain language of the policy, the verdict should have been directed in favor of the defendant instead of the plaintiff.

While the word "poison," as used in the policy, may be construed to mean liquids commonly known as poisons, it is followed by the words "or anything," which clearly indicates that the intent was to include under the entire term everything of a poisonous nature. While it is true that, where the meaning of words in an insurance contract is in doubt, courts are to lean to that reasonable construction most favorable to the assured, they can go no further without making contracts for the parties which they did not intend to make. If words are plain, courts must give effect to them accordingly, or contractual obligations will be subject to variations and violations to suit the exigencies of particular cases. Here, in order to sustain a recovery, the court is asked, after having successfully passed difficulties in the way of holding that the death of the assured was caused solely by external, violent, and accidental means, in the face of evidence that the septic poison was voluntarily, though accidentally, planted in the system of the deceased, to pass the barrier by which the defendant excepted from the con-

tract death caused in whole or in part by the administration or absorption, accidental or otherwise, of poison or any other substance. No precedent to which we have been referred by counsel, or which we have been able to discover, warrants a construction of the contract of insurance that will enable the court to do that. Numerous cases may be found to the effect that the clause excepting death caused by inhaling gas, accidentally or otherwise, only covers cases of voluntary conscious inhalation. Such are *Fidelity & Casualty Co. v. Waterman*, 161 Ill. 632; *Travelers' Ins. Co. v. Dunlap*, 160 Ill. 642; *Paul v. Travelers' Ins. Co.* 112 N. Y. 472; *Menneiley v. Employers' L. Ass. Corp.* 148 N. Y. 596, and *Pickett v. Pacific M. L. Ins. Co.* 144 Pa. St. 79; but they do not apply to this case. Here, there was not that absence of volition and consciousness that were the turning circumstances of those cases. The rule itself is by no means free from criticism, nor has it passed without criticism from respectable courts. *Richardson v. Travelers' Ins. Co.* 46 Fed. Rep. 843. Certainly no good reason can be given for extending it to cases of accidental taking or absorption of poisonous substances into the system through the voluntary use, for a remedial purpose, of some other substance.

In the instances cited the word "inhaled" and the word "take," in view of other language used in the contract, were easily construed to contemplate voluntary conscious action, not in the sense that the victim should know the precise nature of what he was taking or inhaling, or its effect on his system, but that the thing taken should be by his act or permission. Here the cotton was placed in the mouth of the deceased by his permission. True, the fact that it contained the germs which propagated and evolved the poison which was absorbed into the blood with fatal effects was unknown and accidental; but that was within the express terms of the exception under consideration. In *Early v. Standard L. & Acc. Ins. Co.* 71 N. W. Rep. 500, a very recent case, the su-

preme court of Michigan reached the same conclusion to which we have arrived; and to the same effect is *Westmoreland v. Preferred Acc. Ins. Co.* 75 Fed. Rep. 244, where chloroform was administered, from the effects of which, and some other causes, death ensued, and it was held that, as the chloroform would not alone have caused death, the accidental concurrence of some other unknown cause did not make a cause of action. Here the cotton alone would not have produced death. It was properly used, but on account of its containing the poisonous germs not known to exist in it, they were voluntarily, though accidentally, introduced into the system of the deceased, and the poison evolved by their propagation was thereby carried into the circulation, corrupting the blood and causing death. That is one of the very things most carefully guarded against by the words of the insurance contract.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for further proceedings according to law.