# MARYLAND CASUALTY COMPANY *vs.* CHARLES GEHRMANN OF A.

*Warranties in Application For Accident Insurance Governed by Code, Art. 23, sec. 142A; Relating to Materiality—Question for the Jury— Burden of Proof—Contributory Negligence.*

Warranties made in an application for accident insurance are governed by Code, Art. 23, sec. 142A, which provides that whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application, made in good faith, shall effect a forfeiture or be a ground of defense, unless such misrepresentation or untrue statement relate to some matter material to the risk. And Code, Art. 23, sec. 127, declares that any association making engagement for the payment of money in the event of sickness, accident or death shall be deemed to be a life insurance company within the meaning of this article and be subject to all of the requirements applicable to life insurance companies.

Whether misrepresentations or untrue statements contained in an application for accident insurance relate to some matter material to the risk or not, is generally a question of fact for the jury.

In plaintiff's application for accident insurance he stated that he had never received indemnity for any accident except from a named company and that he was in sound condition mentally and physically. The policy as issued by the defendant made these answers warranties. In an action to recover the stipulated weekly indemnity for an accidental injury, the defendant relied upon the alleged falsity of these answers as a bar to the suit. It was admitted by the plaintiff that fifteen years previous he had received an accident indemnity from a company other than the one named in his answer. Defendant's evidence showed that one of plaintiff's legs was slightly curved as the result of an injury received thirty years before and alleged that consequently plaintiff was not in sound physical condition when he applied for the policy. Plaintiff's evidence was to the effect that the curvature of the leg did not render it unsound. *Held*, that since the untrue statements in the application did not avoid the policy unless material to the risk, the jury was properly instructed that if they found the representations as to physical soundness and as to the receipt of indemnity against accident were made in good faith, then the burden was on the defendant to show that these representations were false and material to the risk.

The fact that a party was injured partly in consequence of his own contributory negligence is not a bar to a suit on an accident insurance policy.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

*Defendant's 8th Prayer.*—That the measure of damages in this case, if the jury find for the plaintiff, is the sum of $25 per week from March 22nd, 1900, to May 11th, 1900. (*Refused.*)

*Defendant's 9th Prayer.*—If the jury find that the plaintiff was injured on March 22nd, 1900, and that he went down town before he had fully recovered and that owing to the weakened condition of his leg at that time he fell again and was injured, and that said last injury happened on or about May 11th, 1900, then the measure of damages is at the rate of twenty-five dollars for each week or part of week elapsing between the first and second injuries.   (*Refused.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. L. Marbury* and *Geo. Weems Williams* (with whom was *Carroll T. Bond* on the brief), for the appellant.

There can be no question that the statements of the appellee in his application as to never having received any indemnity for any accident except as therein stated, and as to his being in sound condition physically are warranties.   The parties to a contract of insurance have the right to agree with each other that certain statements made, shall be considered and taken to be warranties.   The parties to the contract of insurance under consideration, have done this by the use of the clearest and most unmistakable language.   In the application read and signed by Gehrman, are the following clauses or provisions : " The following is an exact copy of the warranty clause of the policy delivered to the assured and includes all entries made in said clause of the policy."   " The assured, on the acceptance of this policy, makes the following statements, which he warrants to be true, and such statements are hereby made part of this contract."

Then follow the statements, the falsity of which constitute what are claimed to be the breaches of warranties.  The policy

sued on recites that "in consideration of the warranties made
in the application for this policy (copy of which is endorsed on
the back hereof), and of twenty-five dollars, the Maryland
Casualty Company of Baltimore, Maryland, hereinafter called
the company, does hereby insure Charles Gehrmann of A,"
etc. The copy of the warranties was endorsed on the back
of the policy. When the policy was continued in force for an
additional year, the renewal receipt stipulated that the state-
ments and warranties contained in the application were true at
the date of the receipt.

These facts make the statements warranties, because the
parties have used such language that it is impossible to believe
that they intended that they should be treated as representa-
tions and not warranties. To put any other construction upon
the contract would be to make a new contract for the parties.
*Kerr on Insurance*, 326, 328; *Provident, etc., Society* v. *Llew-
ellyn*, 58 Fed. Rep. 940; *Swick* v. *Home Ins. Co.*, 2 Dill, 163;
*Van Cleave* v. *Union Casualty and Surety Co.*, 82 Mo. App.
668; *McLain* v. *Provident Savings and Life Assur. Society of
N. Y.*, 105 Fed. Rep. 834.

The warranties in this case are a part of the contract of in-
surance by agreement. *Kerr on Insurance*, 327; *Reynolds* v.
*Atlas Accident and Insurance Co.*, 69 Minn. 93. If these state-
ments are warranties, then the plaintiff had no cause of action,
unless sec. 142A of Art. 23, above quoted, applies, inasmuch
as one of the warranties was admittedly false. Under the
common law rule, which still prevails, except in so far as it
has been modified by the statute referred to, the falsity of a
warranty made in an application for insurance rendered the
policy void. In other words, the truth of the warranty was a
condition precedent to the existence of the policy.

Under the common law rule it is inadmissible to show that
the warranty, which is untrue in fact, was made through mis-
take and in good faith, neither it could be shown that the
statement warranted was immaterial. The only proper issue
is the truth *vel non* of the warranty. This is the law today
in regard to all policies not included in the statute quoted."

*Weineland* v. *Security Fire Insurance Co.*, 53 Md. 276; *Mutual Benefit Life Ins. Co.* v. *Wise*, 34 Md. 597; *Fidelity Mut. Life Association* v. *Ficklin*, 74 Md. 180, 181; *Joyce on Iusurance*, 1975, 1964, 1970; *Kerr on Insurance*, 319, 341; *Elliott on Insurance*, 104; *Provident Life, etc., Society* v. *Llewellyn*, 58 Fed. Rep. 940; *Note to Fidelity Mut. Life Assn.* v. *Jeffords*, 53 L. R. A. 193, 205; *Baumgart* v. *Modern Woodmen*, 85 Wis. 546; *Burritt* v. *Saratoga County Mut. Fire Ins. Co.*, 5 Hill (N. Y.) 188; *Van Cleave* v. *Union Casualty & S. Co.*, 82 Mo. App. 668; *McLain* v. *Provident Savings and Life Assn. Soc. of N. Y.*, 105 Fed. Rep. 834.

The Act of 1894, ch. 662 (Code, Art. 23, secs. 142A, 142B), was not intended to operate on accident policies. The whole Act shows that the Legislature had in mind what is ordinarily and generally known as a "policy of life insurance," namely, a policy of insurance whereby the insurer agrees in consideration of yearly premiums during life of the insured to pay a certain sum to the beneficiaries or representatives of the insured on the death of the latter. This intent is still more clearly apparent upon a careful reading of sec. 142B, for that section shows the General Assembly had in mind a policy the value of which could be calculated by certain mortality tables. This is not true in accident insurance because such insurance is not based upon expectancy of life. Suppose the appellee had misstated his age in his application for the policy in this case and had received injuries fatal or otherwise entitling him to indemnity, how could the appellant have taken advantage of this section and calculated the sum it was obliged to pay by the rule laid down therein? It simply could not have done it and no one would attempt to maintain that sec. 141B applies to accident policies. If this is so, how can any one insist that sec. 142A applies to accident policies? Both sections contained in same Act purport to deal with "policies of life insurance," and so far as we can see we submit that there is no reason why the phrase "policy of life insurance," when used in one section, should mean something different from what it means when employed in the other section. Again,

secs. 141 and 142, which precede the sections under consideration, provide that any company granting insurance on the lives of persons under ten years of age "must value all its policies issued on the lives of persons under the age of ten years in accordance with the general legal rules for the valuation of *life insurance policies* based on the mortality table known as Farr's No. 3 for Males." It is evident that these sections apply to what are usually known as life insurance policies and could not be made to apply to a policy similar to the one in the case at bar. What reason is there to think that the Legislature used the phrase "life insurance policies" in sec. 141 in a different sense and to mean something different from the phrase "policies of life insurance" as used in sec. 142A?

There are few cases reported which deal with the question under consideration, and they are of very little assistance, as the solution of the question depends very much upon statutory construction. So far as we have been able to find, our statute is only similar to a statute of Pennsylvania, which was literally copied soon after the decision of this Court in *Fidelity Mutual Life Assn.* v. *Ficklin et al.,* 74 Md. 172. In the *Standard Life and Accident Insurance Co.* v. *Carroll,* 86 Fed. Rep. 567, 41 L. R. A. 194, the United States Circuit Court of Appeals for the Third Circuit (the writ of error being to the United States Circuit Court for the Western District of Pennsylvania) held that an accident policy was not within the Pennsylvania Act of May 11th, 1881. *Logan* v. *Fidelity Co.,* 146 Mo. 114, which was relied on in the Court below, can be distinguished from the one at bar on the theory that in it the suit was for the amount payable in the event of death resulting from injuries and the insured had died. To put it in another way, the only aspect of the policy sued on before the Court was that portion or part of the same which bore any resemblance to an insurance policy on life. In the case at bar, on the other hand, the part of policy which deals with payments in the event of death is not involved at all, the appellee seeking to recover weekly indemnity only. Again, in the *Missouri case* there was no reason why the public policy

of the State as indicated in the statute prohibiting suicide as a defense, should not be enforced as regards all policies in which suicide might be used as a defense, unless the statute, by its terms could only be made to apply to life insurance policies. From the standpoint of public policy there was just as much reason for forbidding an insurance company to use suicide as a defense on an accident policy as on a life policy. In the case at bar, the Legislature might very well distinguish between warranties made in an application for an accident policy and those made in an application for a policy of life insurance, upon the ground that in issuing life policies the company's physician usually examines the applicant, and the company can see for itself whether the statements in the application are true or false, while in accident insurance there is no such physical examination. Again, in life policies the insured pays the premiums year after year, and the policy cannot be questioned until after his death. In this way companies were in a position to collect large sums of money and then deny liability on some frivolous pretext when the chief witness (the insured) against them was dead. In accident policies, on the other hand, the policies only run for a year, and the insured generally makes the claim himself, and in the event of litigation, can testify in his own behalf.

In Missouri, the Federal Court has construed the Missouri Statute differently from the Supreme Court of the State, although the decision of the Federal Court was made before the decision in *Logan's case*. *Ticktin* v. *Fidelity & Casualty Co.*, 87 Fed. Rep. 543. The United States Circuit Court for the Western District of Missouri decided in that case that Rev. St. Mo. 1889, par. 5855, heretofore quoted in *Logan's case*, did not apply to accident policies, and that accordingly suicide was a good defense on such policies. *Carroll's case*, 86 Fed. Rep. 567, *supra*, was expressly affirmed by the United States Circuit Court of Appeals in deciding an appeal from the United States District Court for the Western District of Pennsylvania, in *National Acc. Soc. of New York* v. *Dolph*, 94 Fed. Rep. 743.

Even admitting sec. 142A applies to accident policies, the

question of materiality should not have been left to the jury, for the reason that if either of the warranties in the application were untrue, each of them relates so palpably "to some matter material to the risk " that the materiality is not a question of fact but one of law.    *March* v. *Ins. Co.*, 186 Pa. St. 629; *Lutz* v. *Metropolitan Life Ins. Co.*, 186 Pa. 527; *Meyers* v. *Woodman of W.*, 193 Pa. 470; *Smith* v. *Northwestern Mut. Life Ins. Co.*, 196 Pa. 314; *Meyer Bruns* v. *Pa. Mut. Life I. Co.*, 189 Pa. 579; *Mengel* v. *The Northwestern Mut. I. Co.*, 176 Pa. 280; *Dolan* v. *Mo. Town Mut. Fire I. Co.*, 88 Mo. App. 666; *Brown* v. *Greenfield Life Assn.*, 172 Mass. 498; *Royal Neighbors of Amer.* v. *Wallace*, 89 N. W. Rep. 758; *Carrollton Furniture Mfg. Co* v. *American Credit Indemnity Co.*, 115 Fed. Rep. 77.

Our contention is that if the appellee was in an unsound condition physically when he made the application, then the policy sued on is void, because the materiality of the statement to the risk of insurance undertaken by the appellant is so palpable and apparent as to strike all informed and fair minds alike. There is no evidence at all from which the jury could find that the unsound condition physically of Mr. Gehrmann, admitting that he was in an unsound condition, was immaterial.    On the contrary, the evidence of Doctors Brinton and Trimble, which is uncontradicted on this point, shows that it was material.    So too, the statement by the appellee as to never having received indemnity except from the Standard is material as a matter of law.    In the last cited case the Court decided that on a contract of credit insurance the misstatement of losses for three years preceding issuance of policy was material as a matter of law.    Now, what is the difference between the statements in that case and those in this case?    Both relate to past history and experience.    Insurance is based on experience.    In this case the insurer, by warranted statement, and one which was not misunderstood, is informed that the insured has only received indemnity for accident from one other company whereas in fact he now admits that he had received indemnity from two accident companies, and that he failed to disclose or mention the company from which he had received the larger amount

of indemnity.    Mr. Barton, the solicitor, who took the application being, the agent of the Standard when the appellee was in that company, probably knew of his experience with the Standard, but there is nothing to show that anyone connected with the appellant had any idea that he had ever received anything from any other company.    It is a fair assumption that the appellee would not have written the policy if it had knowledge of the experience of other companies with the risk insured.

The testimony of the defendant's experts, *which is uncontradicted*, was that the disease of *ostitis deformans* makes the bone more liable to take on inflammation from a blow or fall than a bone which had never been affected by that disease. Dr. Blake, a witness, called by the plaintiff, corroborates this, stating it as the general rule.    Is it fair that the company should suffer for this failure to disclose ?    It is incomprehensible that the plaintiff could have been laid up with so slight an accident as that described by him in his testimony for such a length of time, except that his leg was in an unsound condition and the fall brought back the old inflammation in the bone.    In other words, the company ought not for a premium paid for a policy insuring against future accident have to pay thereunder for the effects of a disease of the bone contracted years before the issuance of the policy.

The defendant's eighth and ninth prayers were based upon the ground that the plaintiff failed to use due care to mitigate and minimize, as far as possible, the amount of indemnity payable under the policy, and that by going out before his full recovery, he had thereby subjected the defendant to additional weekly payments.    "It is the duty of the insured towards the insurer to use all due care and pursue the proper course to effect a cure, so that the loss of time for which he is to receive indemnity may be no greater than is reasonably necessary." *Young* v. *Travelers Ins. Co.*, 80 Me. 244, 248.

*Robert P. Graham* (with whom was *James E. Ingram, Jr.*, on the brief), for the appellee.

The test of what is life insurance, seems to be whether or

not the payment of a stipulated sum depends upon the termination of the life of the insured.   In section 1 of the insurance policy offered in evidence it is provided: "If death shall result from any such injury, independent from all other causes, within ninety days from the happening of the accident causing such injury, the company shall pay the principal sum above specified to Mrs. Annie M. Gehrmann, wife of the insured, if surviving, otherwise, to the legal representative of the insured."

 The most prominent feature in this policy is the possible death of the plaintiff.   The mere introduction of other and minor results from possible accident, does not rob the policy of its true nature.   Section 115 of Article 23 of the Code, enables all life insurance companies to also issue accident policies.   They seem to be treated throughout our whole system of insurance laws, as one and the same class of corporations. Within the past few years there has been a great change and development in the methods of life insurance.   If we were to hold only those policies which provide for the payment of a certain stipulated sum in case of death, and the happening of that contingency being the only method of maturing the policy, we would shut out from the operation of the statute we are considering, a large percentage of the life insurance policies now outstanding.   Will, or can the Court say that the form of policy known as endowment policy, or other forms of tontine policies, are not life insurance policies?   This question has been most fully discussed in *Logan* v. *Fidelity & Casualty Company*, 146 Missouri, 114.

The fact that the death must be from a limited number or special class of causes in order to mature the policy, does not seem to make it any less a life insurance policy, than if the death were to occur from any cause.   *Cook on Insurance*, section 2.

The Act of 1894 is remedial in its nature.   *Fidelity Mutual Life Insurance Company* v. *Ficklin et al.*, 74 Md. 185.   It should therefore be construed liberally to advance the remedy and obliterate the mischief intended to be corrected by the statute.   *Franklin* v. *Franklin*, 1 Md. Ch. 342; *Mayor, etc., of*

*Baltimore,* v. *Root,* 8 Md. 95; *Miller* v. *Stewart,* 8 Gill, 129. The whole question might be summed up in the maxim of construction—*In verbis, non verba, sed res et ratio, quaerenda est.* But in this case it would hardly seem necessary to go beyond the plain and unambiguous language of the statute and the ordinary and every day use of the term life insurance to make the statute in this case govern the construction of the application for the policy sued upon.

If then, as we suppose, chapter 662 of the Acts of 1894, is applicable to the application for insurance offered in evidence in this case, and that the construction placed upon a similar act in the case of Ficklin in 74 Md., shall control the Court, then this one legal question practically disposes of this whole controversy.

The Court left it to the jury to find whether or not the plaintiff, Gehrmann, was in sound health at the time he made application for the policy of insurance which was subsequently issued to him and upon which this suit is based. The testimony of Dr. Street was to the effect that the leg about which evidence was introduced was perfectly sound. The testimony of Dr. Blake was to the same effect. The testimony offered on behalf of the defendant company does not seem in any way to weaken the force of this testimony, but should there be any conflict of testimony upon this point, the proper tribunal to decide the matter was the jury. If, as the defendant company seem to argue, every departure from absolute normal conditions renders a person unsound physically, within the meaning of this application for insurance, and every slight defect have the power to avoid a policy, it would be almost impossible for any one to recover.

Sound condition physically means that one is in a normal condition as to his ability to use his various members for all ordinary purposes, and that there is no inherent weakness that may cause such an unusual disposition towards accident, as to make the risk unusually hazardous. *Standard Insurance Company* v. *Mardon,* 133 Indiana, 384; *Elliott on Insurance,* 375 and 376; *May on Insurance,* 295; *Mut. Benefit Co.* v. *Wise,* 34 Md. 597.

PEARCE, J., delivered the opinion of the Court.

On April 6th, 1901, Charles Gehrmann of A., brought suit against the Maryland Casualty Company of Baltimore City, a corporation, upon a policy issued by it to him, and insuring him in the amount of a principal sum of five thousand dollars in event of death resulting from external, violent, and accidental means, ocurring during the continuance of the policy, and in the amount of twenty-five dollars weekly indemnity, for a period not exceeding one hundred and four consecutive weeks, against bodily injuries sustained in like manner, and continuously and wholly disabling and preventing him from performing any and every kind of duty pertaining to his occupation as business manager of a lace manufactory.

On March 22nd, 1900, during the continuance of this policy, and while the plaintiff was crossing the street, after leaving an electric car, he fell upon the track and seriously injured his right knee, resulting immediately and continuously in complete disability within the terms of the policy. No question is made to the happening of the accident, or the extent of the injury, but defense is made on other grounds which will be stated later.

The plaintiff claimed the stipulated weekly indemnity from March 22nd, 1900, to March 22nd, 1902, being 104 weeks, but the Court restricted recovery to April 6th, 1901, the date of bringing the suit. The only exception taken, was to the ruling on the prayers, and the verdict and judgment being for the plaintiff, the defendant has appealed.

The policy states upon its face that the insurance was made in consideration of twenty-five dollars, and "of the warranties made in the application for this policy, copy of which is endorsed on the back hereof." Looking to this copy, and to the original which is embraced in the record, it appears that in answer to a question put therein, the plaintiff stated he had never received indemnity for any accident except from the Standard Company, and in answer to another question, that he was in sound condition mentally and physically, whereas he testified in chief that in 1865 he received a blow on the

right knee which for two days gave him some trouble but no longer, and that afterwards his leg was as strong as ever ; and he admitted upon cross-examination that he had received about fifteen years before from the United States Company, an indemnity of $205 for an accident. The alleged falsity of the two answers referred to, are claimed to be breaches of warranty avoiding or forfeiting the policy. The answer to the first question was admittedly untrue in fact, whether made deliberately or inadvertently, but the falsity of the other answer is a matter of inferences dependent upon the view taken of the testimony relating to it.

Dr. Steel, the plaintiff's family physician for twenty-two years, says that he saw the leg when attending him for other ailments, and that it was perfectly sound, though slightly curved ; that after curvature a leg is just as sound as before, and the bone absolutely healthy and good. Dr. Blake, who was called in consultation after the accident of March 22nd, said the plaintiff's leg was deformed, but not diseased or unsound, though he also said that after curvature a bone is more likely to set up inflammation in case of an accident by a blow or fall ; and both these physicians said this leg had never been broken. Dr. Brinton, chief sergeon for the defendant company, saw the leg the day after the accident and said such a leg was more liable to inflammation from any accident than a normal leg, and that plaintiff told him the curvature was caused by a fracture 25 or 30 years before, though this was denied by the plaintiff in rebuttal ; Dr. Brinton also said on cross-examination that when he looked at the leg he knew it had never been broken.

Dr. Trimble, the local surgeon of the defendant company, saw the leg on May 19th, and said that he did not consider that plaintiff when insured was in sound physical condition for work which would require him to walk a great deal, or to stand on his legs to work as a policeman, for instance, must do.

Upon this testimony, plaintiff offered eight prayers, of which only the fifth, sixth and eighth were granted, and defendant offered ten, of which only the third and tenth were granted.

The plaintiff's 5th prayer was to the effect that if the jury found the representations as to physical soundness, and as to the receipt of indemnity against accident, were made in good faith, then the burden was on the defendant to show that these representations were false and material to the risk of insurance.    The plaintiff's 6th prayer placed upon the defendant the burden of proving physical unsoundness at the time of making application for insurance, and the 8th prayer stated the measure of damages, in event of finding for plaintiff, to be $25 per week from the date of the accident to the date of bringing suit.

Of the defendant's granted prayers, the 3rd was that plaintiff could not recover unless the injuries complained of, independently of all other causes, continuously and wholly disabled him from prosecuting his occupation, and the tenth was, that as the statement of the plaintiff that he had received no indemnity for accident except from the Standard Company, was admittedly untrue, though warranted to be true, the verdict must be for defendant if the jury found such untrue statement related to a matter material to the risk of the insurance.

Of the defendant's rejected prayers, the 1st, 2nd, 6th and 7th sought to take the case from the jury ; the 7th, because there was no legally sufficient evidence to warrant recovery ; the 1st, because it did not appear that the injury complained of, independently of all other causes, continuously and wholly disabled the plaintiff ; the 2nd, because the uncontradicted evidence showed that defendant was not in sound condition physically when the application for insurance was made, and the 6th, because the uncontradicted evidence showed that plaintiff had received indemnity for accident other than that received from the Standard Company.

The defendant's 4th prayer went upon the theory that the plaintiff warranted the truth of his statement that he was in sound physical condition, and that if this statement was not true in fact he could not recover, although made in absolute good faith.

The defendant's 5th prayer asserted that if plaintiff had a

curvature of the leg which rendered it more susceptible to injury from a blow or fall, he could not recover unless the jury found his leg was an exception to this rule.

The defendant's 8th and 9th prayers asserted the measure of damages to be $25 per week from March 22nd, 1900, to May 11th, 1900, both these prayers being based upon evidence that on May 11th, 1900, plaintiff prematurely left his house and went upon the street, thereby bringing on a hemorrhage of the knee to which his subsequent disability must be attributed.

The main question in the case, and that upon which the correctness of most of the rulings of the lower Court depend, is whether the warranties made in an application for an accident insurance policy, are within the scope and operation of chapter 662 of the Acts of 1894, codified in *Poe's Supplement to the Code*, as sec. 142A of Art. 23.  That section is as follows : "Whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application, made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk. "  In granting the plaintiff's 5th and 6th prayers, and in rejecting the defendant's 1st, 2nd, 4th, 5th, 6th, 7th, 8th and 9th prayers, the Court acted upon the view that the case was governed by that section of the Code, and this we think is the correct view. There is no doubt that at common law the falsity of a warranty made in an application for an insurance policy, was a condition precedent to the legal existence of the policy, and defeated recovery, even though not material to the risk.  As stated by LORD MANSFIELD in *DeHahn* v. *Hartley*, 1 Term Rep. 343, "There is a material distinction between a warranty and a representation.  *  *  *  It is perfectly immaterial for what purpose a warranty was introduced ; but being inserted, the contract does not exist unless it be literally com-

plied with." This is the law as stated in *Kerr on Insurance*, page 319, and *Joyce on Insurance*, par. 1964; and it was so held in this State in *Mut. Ben. Association* v. *Wise*, 34 Md. 597; *Wineland* v. *Security Co.*, 53 Md. 297, and *Fidelity Mut. Association* v. *Ficklin*, 74 Md. 180.

But this rule was held to operate harshly and unjustly in many cases, and led the Legislature of Maryland, following the example of other States, to enact the Act of 1894, ch. 662, for the purpose of relaxing this rule and modifying the harshness of its operation, and, as said by the Supreme Court of Pennsylvania in *Lutz* v. *Metropolitan Co.*, 186 Pa. St. 527, in commenting upon a similar statute, "This Act has effected a wise and wholesome change in life insurance contracts, in sweeping away a class of merely technical objections to recovery."

It was earnestly and ably argued by defendant's counsel that it would appear upon a careful examination of all the legislation in this State relating to the various kinds of insurance contracts, that the Legislature never intended that sec. 142A should be applicable to accident insurance policies, and we have made such an examination; but without going into an analysis of this branch of the argument, we are of opinion that the question is concluded by sec. 32 of the Act of 1888, codified in *Poe's Supplement* as sec. 127 of Art. 23 of the Code, which in express terms declares that "any person, body politic or corporate, partnership or association, * * * making any engagement for the payment of any money, or other benefits in the event of sickness, *accident*, or death, or other contingency, * * * shall be deemed and taken to be a *life insurance company* within the meaning of *this article*, and shall be subject to *all the requirements of law applicable* to said life insurance companies."

The will of the Legislature is here expressed in unambiguous terms. We have been furnished with no satisfactory reason for taking accident insurance companies out of its apparently designed operation, and the construction we have placed upon it is supported by the text writers, and by the

best considered cases to which we have been referred upon the question.

*Cook on Insurance*, sec. 2, states the law thus : "Where the insurance is confined to accidental bodily injuries, and death resulting therefrom, it is commonly *called* accident insurance, *which is however, merely a form of life insurance, and governed by the same general principles.*"

The 1st vol. of the 2nd ed. of *Amèr. and Eng. Enc. of Law*, p. 785, says, "Accident insurance depends upon *essentially* the same principles as other kinds of insurance."

In *Logan* v. *Fidelity and Casualty Company*, 146 Mo. 114, it was held that section 5855, of Revised Statutes of 1889, declaring that suicide shall be no defense on a policy for the payment of so much money in case of death, or other contingencies stated, applies to policies issued by accident insurance companies as fully as to those issued by any other kind of life insurance companies. In that case the policy sued on, is identical in terms with the policy in this case. All the arguments urged in this case for defendant, were urged in that case and were full considered. A detailed history of the legislation of Missouri bearing upon the subject of life and accident insurance was given in the brief, in which it was argued that a class distinction was made between life and accident insurance, and the policies relating to such insurance, under separate *articles* appropriately entitled "Life Insurance," and "Insurance Other Than Life ;" and that as each department was provided for by provisions and requirements peculiar to each, as a separate business venture, and as section 5855, first appeared in the department entitled "Life Insurance," that the provisions of that section related only to policies issued by life insurance companies as were treated of in *that article*. But the Court rejected this view, and after motion for reargument, overruled the motion, and adhered to the opinion.

The Court said: "The history of the legislation in this State furnishes no particular assistance in the matter of interpreting the meaning of section 5855. * * * It is the language of the section, and not its arrangement in the statute

under one title or another, that must first be looked to to determine its meaning. * * * The real object of the section, as the clear terms of its language express, is to affect *all policies of insurance on life*, from whatever class, department, or line of insurance, the policy may be issued, or by whatever name or designation the company may be known. * * When a policy covers loss of life from external, violent and accidental means alone, why is it not insurance on life? Such a provision incorporated in a general life insurance company, admittedly would be insurance on life; then, why less insurance on life, because not coupled with provisions covering loss of life from usual or natural causes as well? * * * The mere addition of one or more features or elements in a contract of insurance on life, that may serve to give the policy or contract a particular designation in the business or insurance world, will not in the least divest the policy or contract of its chief character of insurance on life, or make the contract other than life insurance." The case before us is stronger than the Missouri case because there was in that State no statute similar to ours declaring that accident insurance companies shall be deemed life insurance companies, and shall be subject to all the requirements of law applicable to life insurance companies, The case of *Tictin* v. *Fidelity and Casualty Company*, 87 Fed. Rep. 543, decided in the United States Circuit for the Western District of Missouri, six months before *Logan's case* was decided, held that section 5855 of the Revised Statutes of that State did not apply to accident policies. But we prefer to adopt and follow the view of the State Court as the sounder and more salutary view.

Having determined that section 142A is applicable to this contract, the next question is whether the materiality of the alleged untrue statements, to the risk, is to be determined by the Court or by the jury, and under our own decisions there can be no doubt that question, in this case, is for the jury.

In *Chew* v. *Bank of Baltimore*, 14 Md. 299, JUDGE BARTOL said: "It is everywhere conceded that the materiality of the disclosure or concealment is a question of fact which must

be submitted to the jury" and it was so held in *Mut. Ins. Co.* v. *Deale*, 18 Md. 50, and in *Ficklin* v. *Fidelity Mut. Co.*, 74 Md. 184. There may be cases in which it would not be proper to submit this question to a jury, as in *Lutz* v. *Metropolitan Co.*, 186 Pa. St., *supra*, where the plaintiff declared in his application that he had never had spitting or raising of blood, though the proof showed he had for a long time been subject to it, and that he died of consumption a year or two after the insurance was effected. But in that case while refusing to submit the question to the jury, the Court said : "Ordinarily questions of good faith and materiality are for the jury, and where it is doubtful whether the matter was material, the question of materiality *must* be submitted to the jury."

Applying these principles to the instructions now under consideration, it is clear without further discussion, that the defendant's 2nd, 4th, 6th and 7th prayers, all of which are based upon the theory that sec. 142A does not apply, were properly rejected. Its first prayer was also properly rejected because there was abundant evidence tending to prove that the disability of plaintiff was complete and continuous, and due to the injury complained of, independently of all other causes. Its fifth prayer was properly rejected, because a *defective* leg is not necessarily an *unsond* leg, and because susceptibility to inflammation from *future accident* is not *present physical* unsoundness.

Its eighth and ninth prayers were both properly rejected, because the doctrine of contributory negligence which they invoke is not applicable in this case. *Cook on Insurance*, sec. 49 and 51. *Providence Life Ins. Co.* v. *Martin*, 32 Md. 313.

The plaintiff's fifth and sixth prayers rest upon the theory that sec. 142A applies as we have determined it does, and there was no error in putting the burden of proof upon the defendant as they do. "The defense of forfeiture must be pleaded and proven by the insurer." *Kerr on Insurance*, p. 778. "The burden is upon him who claims a forfeiture to show that he is clearly entitled to it." *Idem*, 432; *Kasten* v. *Interstate Casualty Co.*, 99 Wis. 73; *Jones* v. *U. S. Mut. Acci-*

*dent Association,* 92 Iowa, 652; *Mut. Ben. Life Ins. Co.* v. *Wise,* 34 Md. 597.   No objection was made in the brief, or at the argument, to the granting of plaintiff's eighth prayer on the measure of damages, and we presume it was waived. Finding no error in the rulings of the Court, the judgment will be affirmed.

> *Judgment affirmed with costs above and below.*