## RAILWAY MAIL ASS'N v. DENT.

### (Circuit Court of Appeals, Eighth Circuit. April 10, 1914.)

### No. 3557.

**1.** INSURANCE (§ 457*)—ACCIDENT POLICY—"ACCIDENTAL"—DEATH FROM POISON IVY.

Where plaintiff's husband died as the result of coming in contact with poison ivy while in the woods, his death was "accidental" within the terms of an accident policy insuring against injuries, resulting in death, through external, violent, and accidental means.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1175; Dec. Dig. § 457.*

For other definitions, see Words and Phrases, vol. 1, pp. 62–70; vol. 8, p. 7560.

Accident insurance, risk and causes of loss, see notes to National Acc. Society v. Dolph, 38 C. C. A. 3; New Amsterdam Casualty Co. v. Shields, 85 C. C. A. 126.]

**2.** INSURANCE (§ 457*) — ACCIDENT POLICY — CAUSE OF DEATH — DISEASE — POISON.

An accident policy insured against death resulting through external, violent, and accidental means; the constitution of the association providing that no benefit should be payable unless the accident alone resulted in producing visible external marks of injury or violence, and unless death or disability resulted wholly from the injury, and not from poison or injurious matter taken or administered, accidentally or otherwise. Decedent while in the woods accidentally came in contact with poison ivy, which resulted in an eruption between his fingers, which grew until it covered his limbs and body, and in seven weeks caused his death. It was also shown that contact with ivy operates like a burn, in that when the eruption covers the body it seals the skin against discharge of secretions and blood poisoning results. *Held,* that decedent's death did not result from poison either "taken or administered," nor from disease.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1175; Dec. Dig. § 457.*]

**3.** INSURANCE (§ 529*)—ACCIDENT POLICY—AMOUNT OF LIABILITY.

Decedent, insured by an accident policy against accidental injury or death, came in contact with poison ivy in the woods May 2, 1909, at which time the certificate of insurance and the constitution and by-laws of the insurer provided for payment of $3,000 if death resulted within 120 days. On June 8th following the constitution and by-laws were amended so as to increase the indemnity to $4,000 in case of death, within the limited period after accident, of any member of the beneficiary department. Decedent died June 23, 1909. *Held* that, since the insurance was against accident, as distinguished from decedent's death, which was the result of the accident alone, and this happened prior to the amendment, plaintiff's recovery was limited to $3,000.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1315; Dec. Dig. § 529.*]

In Error to the Circuit Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Action by Ella S. Dent against the Railway Mail Association. Judgment for plaintiff (183 Fed. 840) and defendant brings error. Affirmed, on condition.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Leo Kennedy, of St. Paul, Minn. (John P. Kennedy, of St. Paul, Minn., on the brief), for plaintiff in error.

O. H. O'Neill, of St. Paul, Minn., for defendant in error.

Before HOOK and SMITH, Circuit Judges, and POPE, District Judge.

HOOK, Circuit Judge. This case involves the liability of the Railway Mail Association, an incorporated fraternal benefit society, under a certificate of accident insurance issued to James Dent for the benefit of his wife, Ella S. Dent. The association promised by the certificate to pay Mrs. Dent $3,000 in case her husband "received injuries through external, violent, and accidental means, resulting in his death from such injuries within 120 days." The constitution and by-laws of the association provided as follows:

"No benefit or sum whatever shall be made payable in any case whatsoever unless the accident alone results in producing visible external marks of injury or violence suffered by the body of the member, nor unless the death or disability results wholly from the injury and within 120 days from the date thereof. Nor shall any benefit be paid where death or disability results from * * * poison or other injurious matter taken or administered accidentally or otherwise. * * * Accidental death shall be construed to be either sudden violent death from external causes, * * * or death within 120 days from injuries received by accident alone."

While in the woods in the suburbs of St. Paul, Minn., Dent accidentally came in contact with poison ivy, with the result that an eruption appeared between his fingers two or three days afterwards, and grew until it covered his limbs and body and in about seven weeks caused his death.

[1] The essentials of a recovery by Mrs. Dent—so far as any contentions advanced make these a matter for present consideration—are that her husband's death was caused by "accident," that the accident alone resulted in producing "visible external marks of injury," and that his death did not result from poison or other injurious matter "taken or administered" accidentally or otherwise. His contact with the poison ivy happened by chance, and was in ignorance of its character, was unintentional and involuntary, and the result from his conscious act was unexpected. This would seem to make it an accident within the customary meaning, as clearly as if he had been stung by a poisonous insect or bitten by a poisonous reptile. Association v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60; Western Commercial Travelers' Ass'n v. Smith, 29 C. C. A. 223, 85 Fed. 401, 40 L. R. A. 653; Omberg v. Mut. Ass'n, 101 Ky. 303, 40 S. W. 909, 72 Am. St. Rep. 413. The phrase "injury by accident" in the English Workmen's Compensation Act was held by the House of Lords to include an infection with anthrax while handling wool. In Brintons v. Turvey, App. Cas. (1905) 230, the Lord Chancellor said:

"I think in popular phraseology, from which we are to seek our guidance, it [the act] excludes, and was intended to exclude, idiopathic disease; but when some affection of our physical frame is in any way induced by an accident, we must be on our guard that we are not misled by medical phrases to alter the proper application of the phrase 'accident causing injury' be-

cause the injury inflicted by accident sets up a condition of things which medical men describe as disease. Suppose in this case a tack or some poisoned substance had cut the skin and set up tetanus. Tetanus is a disease; but would anybody contend that there was not accident causing damage?"

[2] This has especial bearing on the argument that Dent died of a disease, that is, blood poisoning, and not from accident. The testimony was that contact with ivy operates much like a burn, in that when the eruption covers the body it seals the skin against the natural discharge of the secretions, and blood poisoning results. The ultimate effects of many injuries indisputably external and accidental might be similarly described. A like contention was before this court in Western Commercial Travelers' Ass'n v. Smith, supra.. Next, the accident alone must have produced "visible external marks of injury." There is no doubt that contact with the ivy directly and alone caused the condition described; no other cause is suggested. Nor is it disputed that the eruption, first on the hands and then on the limbs and body, was both visible and external. True, it did not appear until two or three days after the contact; but it was not provided it should show at once. It came soon and in the natural course, and was of a character that left no doubt of the immediate cause.

Finally, death must not have resulted from poison or other injurious matter "taken or administered" accidentally or otherwise. This phrase has a more limited meaning than that claimed by counsel for the association. Of course the poison or injurious substance was not "admintered," as that ordinarily contemplates the affirmative action of another person. Nor do we think it was "taken." If the insured had accidentally fallen into a vessel of corrosive liquid, or had been injured by the bursting of a carboy of vitriol, to which he did not contribute it would not be said the injurious substance was taken or administered. The term "taken," which is nearest the case before us, signifies in its text an internal taking, and not an accidental external contact. In McGlother v. Provident, etc., Co., 32 C. C. A. 318, 89 Fed. 685, the insurance excluded injuries from poison or "contact with poisonous substances." In Preferred Accident Ins. Co. v. Robinson, 45 Fla. 525, 33 South. 1005, 61 L. R. A. 145, 3 Ann. Cas. 931, it did not cover injuries "from any poison or infection, or from anything accidentally or otherwise taken, administered, absorbed, or inhaled." The language was substantially the same in Kasten v. Casualty Co., 99 Wis. 73, 74 N. W. 534, 40 L. R. A. 651, and Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S. W. 745, 64 L. R. A. 349, 104 Am. St. Rep. 857, 1 Ann. Cas. 252. Such cases are not in point here. So many and varied are the causes of accidental injury that the particular language employed in instruments of insurance is of the greatest importance. A word added or omitted may alter materially the scope of the indemnity. Many cases like the one at bar lie close to the border line perhaps, because not definitely in mind for inclusion or exclusion; but it is a delicate thing for a court to adopt the latter course merely upon a supposition that they would have been excluded in terms had they been thought of. The insurer most familiar with the subject chooses the words of his undertaking, and it is not unjust to take them in the

sense conveyed to the ordinary reader, nor to hold against him in case of real substantial doubt.

[3] The remaining question is as to the amount of recovery. The accident occurred May 2, 1909, at which time the certificate of insurance and the constitution and by-laws of the association provided for $3,000 if death resulted within 120 days. June 8, 1909, an amendment of the constitution and by-laws was adopted, increasing the amount of indemnity to $4,000 in case of death within the limited period after accident of any member of the beneficiary department. Dent died June 23, 1909. The death was the result of the accident alone, and the accident happened before the amendment. The insurance was against accident, not death, as in an ordinary life policy. The subsequent death was relevant only as indicating the extent of the accidental injury. The cause of action against the association arose when the accident occurred, and was not subject to impairment by subsequent default of the insured in the conditions of continued membership. The insurance being in force at the time of accident, the right of the beneficiary would not have been affected by its lapse before the death ensued. Burkheiser v. Accident Ass'n, 61 Fed. 816, 10 C. C. A. 94, 26 L. R. A. 112. If no subsequent default of the insured would lessen the predetermined sum, it would seem that to increase it should require acts or words showing intention of the party obligated. That intention does not sufficiently appear in the amendment. Substantive legislation, governmental or corporate, relating to demands or rights of action, is generally construed as prospective in operation, and not as affecting those which have accrued. The amendment does not suggest on its face a different construction, the certificate of insurance, which the petition says contained a promise to pay $3,000, was not changed, and there was no proof of subsequent practice by the association indicating the amendment was to have retrospective effect. The recovery in the trial court was $4,000, with interest at 6 per cent. per annum from December 1, 1909. We think it was excessive by $1,000 and interest. If the excess, being separable from the balance is remitted, the judgment for the right amount should stand. Arkansas Cattle Co. v. Mann, 130 U. S. 69, 9 Sup. Ct. 458, 32 L. Ed. 854; Hansen v. Boyd, 161 U. S. 397, 16 Sup. Ct. 571, 40 L. Ed. 746.

The order will therefore be that if Mrs. Dent will, within 60 days after the filing of this opinion, file in the trial court a remittitur of $1,000 and interest from December 1, 1909, and also file a certified copy thereof in this court, the judgment so reduced will be affirmed; otherwise, it will be reversed, and the cause remanded for a new trial.